Carrie J. TIMUS, Petitioner,

v.

DISTRICT OF COLUMBIA DE-
PARTMENT OF HUMAN
RIGHTS, Respondent.

William J. Davis, Inc., Intervenor.

No. 90–AA–465.

District of Columbia Court of Appeals.

Argued Oct. 15, 1992.

Decided Nov. 8, 1993.

752

Karen L. Barr, with whom Thomas P. Olson and John P. Relman, Washington, DC, were on the brief, for petitioner.

Edward E. Schwab, Asst. Corp. Counsel, with whom Herbert O. Reid, Sr., Corp. Counsel at the time the brief was filed, and Charles L. Reischel, Deputy Corp. Counsel, Washington, DC, were on the brief, for respondent.

Michael E. Brand, Washington, DC, for intervenor.

Before ROGERS, Chief Judge, FERREN, TERRY, STEADMAN, SCHWELB, FARRELL, WAGNER, KING, and SULLIVAN, Associate Judges, and MACK, Senior Judge.

PER CURIAM.*

The District of Columbia Human Rights Act, D.C.Code §§ 1–2501 to –2557 (1992) (the Act), "provides alternative avenues of redress—administrative or judicial"—for claims of unlawful discrimination. *Brown v. Capitol Hill Club*, 425 A.2d 1309, 1313 (D.C. 1981). An obvious purpose of the administrative avenue is to afford persons claiming discrimination a less formal and expensive means of obtaining relief than through court proceedings.[1] A key component of the administrative process is conciliation or settlement of a complaint under the auspices of the agency administering the Act, at the times relevant here, the District of Columbia Office of Human Rights (OHR).[2] The petition for review in this case brings before us a challenge to the facial validity of a rule of procedure adopted by the agency to govern the conciliation process, as well as to its application to petitioner's complaint. We hold that we have jurisdiction to consider petitioner's challenge to the validity of the rule, and sustain the rule as a proper implementation of OHR's statutory mandate; but that we lack "contested case" jurisdiction to review petitioner's claim of erroneous application of the rule to her case. For the reasons stated in this opinion, we dismiss the petition for review.

## I.

On December 5, 1986, petitioner filed a complaint with OHR alleging that intervenor William J. Davis, Inc., a real estate management company, had discriminated against her on the basis of family responsibilities (specifically, that she had a two year old child) in denying her application to rent an apartment. *See* D.C.Code § 1–2515(a). Pursuant to D.C.Code § 1–2545, OHR investigated the complaint and, after initially finding no probable cause, determined in February 1988 that there was probable cause to believe that intervenor had engaged in unlawful discrimination against petitioner. D.C.Code § 1–2545(b). OHR immediately endeavored to conciliate the claim, § 1–2546(a), by asking intervenor in writing whether it was "prepared to pursue conciliation of this matter." Intervenor replied affirmatively and asked for a conference with OHR and petitioner to discuss the case.

On July 12, 1988, the Associate Director of OHR notified petitioner in writing that, dur-

---

* Parts I, II, IV and V of this opinion were authored by JUDGE FARRELL; part III was authored chiefly by JUDGE FERREN

1. The benefits of administrative handling of civil law are to provide an opportunity for settlement of complaints voluntarily before the hearing and to bring about more rapid compliance with the law by offering an alternative to lengthy court proceedings. We believe the establishment of administrative hearings to be vital to the success of enforcing Title 34. COMMITTEE REPORT. DISTRICT OF COLUMBIA COUNCIL. LEGISLATIVE REPORT ON TITLE 34, THE HUMAN RIGHTS LAW (October 15, 1973), at 2.

2. Two entities, the District of Columbia Office of Human Rights and the District of Columbia Commission on Human Rights, administered the Act for most of the time relevant here. *See* D.C.Code § 1–2541. The Office of Human Rights has since been abolished and its functions assigned to the new District of Columbia Department of Human Rights and Minority Business Development, created by Reorganization Plan No. 1 of 1989, 36 D.C.Reg. 6305 (July 13, 1989), and Mayor's Order No. 89–247, 36 D.C.Reg. 7847 (Nov. 1, 1989). For convenience sake, we shall refer to the Office of Human Rights throughout this opinion, abbreviated as "Office" or "OHR."

ing conciliation, intervenor had "offered the following remedy to resolve this matter":

1. Complainant would be considered for and given an apartment at the same rental rate that she would have gotten had she not been discriminated against, provided Complainant updates her rental application and is found to be currently qualified for the apartment. Said rental rate will remain at that rate for at least 24 consecutive months; and

2. Respondent will pay Complainant's Attorney fees, provided Complainant submits an itemized legal statement for services rendered regarding this matter.

The Associate Director explained that OHR had determined that this offer would make petitioner whole and that, if she did not advise the Office by July 22, 1988, as to whether she would accept it, the complaint would be subject to dismissal under § 716.9 of OHR's rules of procedure.[3] On July 22, petitioner sent the Associate Director a letter in which she asked twelve questions about the intervenor's offer. On July 29, 1988, the Associate Director replied in writing with answers to each of the twelve questions and asked petitioner to advise him by August 5 whether she would accept the offer. Petitioner responded on August 5 with a letter telling the Associate Director that "there are some of your answers that must be clarified" and posing approximately seven questions.

On August 8, 1988, the Associate Director wrote petitioner explaining:

This will confirm our telephone conversation of August 5, 1988 in which I advised you that:

1. You are given an extension of time, until August 12, 1988, in which to seek advice of counsel regarding whether or not the Office's possible dismissal of your Complaint will bar you "from suing Respondent." You must advise the Office by not later than August 12, 1988 as to whether or not you accept Respondent's offer of settlement in this matter;

2. The Office has reviewed your letter of August 5, 1988 and has determined that the questions contained therein have either already been sufficiently answered by the Office, or do not require response by the Office in order for you to make a decision as to whether or not you will accept Respondent's offer.

Petitioner replied in a letter of August 11, 1988, in which she stated in substance:

I will not be able to make a decision until my questions of August 5, 1988 are answered in writing only, as I have requested. I have made it clear in my letter of July 22, 1988[:] "Before I can consider this offer and/or accept it, there are some questions that I *must* have answered."

I am sending a copy of the correspondence to you for review and determination on whether or not my questions of August 5, 1988 are legitimate questions for one to ask and warrant answers. I do not believe that my questions of August 5, have been sufficiently answered by your office nor do I believe that they do not require response by your office.

Please provide your reply in writing only, Thank you. [Emphasis in original.]

For reasons unexplained in the record, nothing further transpired in the case for almost a year and a half. On February 6 and again on February 7, 1990, intervenor's counsel wrote OHR requesting that the complaint be "administratively dismissed," pointing to the long delay since the settlement offer had been made and the fact that intervenor no longer managed the property, which had been sold. Nevertheless, on February 26, 1990, intervenor transmitted a new offer of settlement to OHR which differed from the former one only in that the rental rate would now be the current 1990 (rather than 1986) rent level.[4] On March 7, 1990,

---

3. Rules Governing Procedure and Practice for Private Sector Complaints Alleging Unlawful Discriminatory Practices, 33 D.C. Reg. 6917 *et seq.* (1986), to be codified at 4 DCMR § 700 *et seq.*

In this opinion, we employ the section sign (*e.g.,* § 716.9) of the anticipated regulation.

4. The offer also provided that in view of the sale of the property, the apartment applied for would

the Director of OHR wrote petitioner setting forth the modified offer and stating:

> We are making one last attempt to resolve this matter prior to exercising the Department's option under Section 716.9 of our Rules. Thus, if you do not advise the Office by the close of business March 19, 1990 as to whether you will accept Respondent's offer as was outlined in our July 12, 1988 letter and as subsequently conditioned with regard to current rental rates, your Complaint will be subject to DISMISSAL.

Petitioner replied in a letter of March 19, 1990, in which she insisted that the Office's letter of March 7 "does not even attempt to address my concerns" expressed in petitioner's August 11, 1988 letter, and asking why the Office had "change[d] its position again in favor of" intervenor's modified offer. Petitioner's letter asserted that she was "being railroaded into this settlement agreement by your office and [intervenor]," and asked: "What are your reason[s] for finding this last stated offer in your letter of March 7, 1990, indeed, a suitable make whole offered remedy for my acceptance." On March 22, 1990, the Director informed petitioner in writing that the case was being "administratively closed" pursuant to § 716.9 of OHR's rules of procedure because of her failure to advise the Office of her acceptance of the settlement offer by March 19, 1990.[5]

## II.

A brief summary of the relevant statutory and regulatory provisions is necessary to understand the issues presented, including OHR's threshold objection to our jurisdiction. As we stated at the outset, a person believing herself the victim of unlawful discrimination may, under the Act, elect initially to sue in court or to file an administrative complaint with OHR. *See* D.C.Code §§ 1–2544(a), –2556(a). If she elects the second route, OHR commences an investigation. Provided the complaint is not withdrawn vol-

untarily before the investigation is completed and findings are made concerning jurisdiction and probable cause, § 1–2544(b), the investigation leads to a determination by OHR (assuming jurisdiction is found) either that there is probable cause to believe the respondent has engaged in unlawful discrimination or that there is no probable cause, in which case the complaint is dismissed. § 1–2545(b), (c).

*Efforts to resolve the complaint by conciliation* may begin as soon as it is filed. Section 1–2546(a) provides that "[i]f, in the judgment of the Office, the circumstances so warrant, it may, at any time after the filing of the complaint, endeavor to eliminate such unlawful discriminatory practice by conference, conciliation, or persuasion." The terms of a conciliation agreement may include prohibitory relief and "such affirmative action as, in the judgment of the Office, will effectuate the purposes of this chapter...." § 1–2546(b). And, "[u]pon agreement of all parties to a complaint ... a conciliation agreement shall be deemed an order of the Commission, and shall be enforceable as such." § 1–2546(c). The Act further provides, however, that "[i]n case of failure of conciliation efforts, or in advance of conciliation efforts, as determined by the Office, and after a finding of probable cause, the Office shall cause to be issued and served in the name of the Commission, a written notice ... requiring the respondent to answer the charges of [the] complaint at a public hearing before 1 or more members of the Commission or before a hearing examiner...." § 1–2550. In that event, a hearing tribunal of the Commission "shall be appointed to make a determination upon such complaint." § 1–2551(a).

Pursuant to authority delegated by the Act, § 1–2541(c), OHR has adopted rules of procedure governing the conciliation process (*see* note 3, *supra*) and specifically construing the phrase "[i]n case of failure of conciliation efforts" in D.C.Code § 1–2550. Section

---

have to be one currently owned or managed by intervenor.

**5.** The previous day, March 21, the Director had written to petitioner reviewing the Office's previous written and telephonic communications with

her in which it had attempted to answer her questions, and explaining why the modified offer of March 7 did not entail a change of the Office's position regarding the reasonableness of the original settlement offer.

716.11 of the rules provides that "[c]onciliation shall be deemed to have failed if during the thirty (30) day conciliation period respondent refuses to participate in conciliation or if respondent's offer of a remedy is such that it will not make complainant whole and complainant refuses to accept such an offer." By contrast, § 716.9 of the rules provides as follows:

> If during conciliation efforts, respondent offers a remedy that would place complainant in the same position that complainant would have been in had the alleged discriminatory practice not occurred, and complainant refuses to accept such offer, and if the Director determines that such offered remedy would make complainant whole, the Director may order the complaint dismissed. [Emphasis added.]

Of final importance to our discussion is § 1–2556(a), dealing with election of remedies. It provides in part:

> Any person claiming to be aggrieved by an unlawful discriminatory practice shall have a cause of action in any court of competent jurisdiction for damages and such other remedies as may be appropriate, unless such person has filed a complaint hereunder: Provided, that where the Office has dismissed such complaint on the grounds of administrative convenience, or where the complainant has withdrawn a complaint, such person shall maintain all rights to bring suit as if no complaint had been filed.

### III.

■■■ We consider first the objection by OHR to this court's jurisdiction to hear the petition for review. The District of Columbia Administrative Procedure Act (DCAPA) confers the right to judicial review of agency action by this court upon "[a]ny person suffering a legal wrong, or adversely affected or aggrieved, by an order or decision of the

Mayor or an agency in a contested case...." D.C.Code § 1–1510(a).[6] A "contested case" is defined by the DCAPA as "a proceeding before the Mayor or any agency in which the legal rights, duties, or privileges of specific parties are required by any law ... or by constitutional right, to be determined after a hearing before the Mayor or before an agency...." D.C.Code § 1–1502(8). "The principal manifestation of a 'contested case' is its character as a quasi-judicial process based upon particular facts and information, and immediately affecting the interests of specific parties in the proceeding." Citizens Ass'n of Georgetown v. Washington, 291 A.2d 699, 702 (D.C.1972). This "quasi-judicial process" consists of a "trial-type" hearing, Chevy Chase Citizens Ass'n v. District of Columbia Council, 327 A.2d 310, 314 (D.C.1974) (en banc), which is "statutorily or constitutionally compelled...." W.C. & A.N. Miller Dev. Co. v. District of Columbia Zoning Comm'n, 340 A.2d 420, 422 (D.C.1975). To establish direct review jurisdiction in this court, therefore, "a petitioner must overcome two obstacles":

> the first obstacle ... is that an administrative hearing must be either statutorily or constitutionally compelled; the second, that such a hearing must be adjudicatory as opposed to legislative in nature.

Donnelly Assoc. v. District of Columbia Historic Preservation Review Bd., 520 A.2d 270, 276 (D.C.1987) (quoting Miller Dev. Co., 340 A.2d at 422).

Neither the parties nor intervenor disputes that the hearing prescribed before a tribunal of the Commission on Human Rights is a "trial-type" hearing "based upon particular facts and information, and immediately affecting the interests of specific parties in the proceeding." Citizens Ass'n of Georgetown, 291 A.2d at 703. On the other hand, no one contends that OHR's antecedent determination whether or not there has been a "failure

---

**6.** The judicial review provision of the Human Rights Act, D.C.Code § 1–2554, provides for review in this court of "an order or decision of the Commission" (emphasis added). The decision presently under review is not one of the Commission, but of OHR. However, this court also has jurisdiction under D.C.Code § 11–722 (1989) to review "orders and decisions of ... any agency

of the District of Columbia ... in accordance with the District of Columbia Administrative Procedure Act...." Since the Office of Human Rights is indisputably an "agency" as defined by the DCAPA, D.C.Code §§ 1–1502(3) –1502(4), the parties are in accord that this court has jurisdiction over the petition provided it meets the contested case requirements of the DCAPA.

of conciliation efforts," § 1–2550, is made following a trial-type evidentiary hearing. For this reason, OHR asserts that its determination that conciliation had not failed in this case—because petitioner refused to accept a settlement offer, that would have made her whole—does not create a contested case. But the issue is considerably more complex than that.

 Petitioner's principal line of attack is that, under the Act, she was entitled to a formal hearing before the Commission once probable cause had been found and there had been a "failure of conciliation efforts" for any reason at all. Her contention is that the agency's dismissal under § 716.9 of its rules was unauthorized and that she was denied a hearing compelled by the statute in the circumstances. Ordinarily, this court has jurisdiction not only when a contested case (trial-type) hearing has taken place, but also when a party has made "an effort to obtain such a hearing which the agency erroneously denied." *Auger v. District of Columbia Bd. of Appeals & Review*, 477 A.2d 196, 206 (D.C. 1984). That is, we have authority to order a contested case hearing, or at least to preserve the right to such a hearing, when an agency erroneously withholds that right. *Cf. Capitol Hill Hosp. v. District of Columbia State Health Planning & Dev. Agency*, 600 A.2d 793, 799 (D.C.1991); *Dillard v. Yeldell*, 334 A.2d 578, 579 (D.C.1975). Of course, it is not enough for the petitioner merely to *assert* the right to a contested case hearing to confer jurisdiction on this court. If analysis reveals that a party is not entitled to a contested case hearing after all, we must dismiss the appeal of the agency's order for lack of jurisdiction. *See, e.g., Jones & Artis Constr. Co. v. District of Columbia Contract Appeals Bd.*, 549 A.2d 315 (D.C.1988); *Dupont Circle Citizen's Ass'n v. District of Columbia Zoning Comm'n*, 343 A.2d 296 (D.C. 1975) (en banc) (citing *Chevy Chase Citizens Ass'n, supra*). Critically, however, on the way to—that is, in aid of—deciding whether a party has had, or is entitled to, a contested case hearing, and thus deciding whether we have jurisdiction, our decisions have had to resolve one or more legal issues definitively; we have made legal rulings with preclusive effect both in the case at hand and for future cases. *See Jones & Artis*, 549 A.2d at 317–18, 327.[7] In short, we have exercised jurisdiction to determine whether we have jurisdiction, and we have made all rulings necessary to that determination. *E.g.*, note 7, *supra*. As a consequence, once the analysis confirmed that the petitioner had not either received or been entitled to a contested case hearing, we have "dismissed" for lack of jurisdiction rather than "affirmed," even when definitively deciding various legal issues in the process. *See id.*

 Such merits rulings on issues inherent in a jurisdictional analysis are justified because courts, at the very least, "always have jurisdiction to determine their jurisdiction." *Ilan–Gat Engineers, Ltd. Antigua*

---

7. In *Jones & Artis Constr. Co. v. District of Columbia Contract Appeals Bd., supra*, the Contract Appeals Board dismissed a proffered "appeal" on the ground that petitioner had actually filed a "protest" and had filed it too late to satisfy the ten-day statute of limitations. The question on appeal to this court, therefore, was whether Jones & Artis had filed a timely "appeal" or an untimely "protest" with the Board. If it was the former, then we likely had jurisdiction because an "appeal" of an agency director's decision to an administrative appeals board commonly creates a contested case requiring a trial-type hearing. A bid "protest" lodged with an appeals board, however, typically does not. *See id.* at 318. Accordingly, we said:

[I]f Jones & Artis filed an "appeal" with the Board, we may have jurisdiction to review the Board's decision. But, if Jones & Artis filed a "protest," as the Board itself ruled, we do not have jurisdiction, and any relief from the Board's action would have to be sought, in the first instance, from the Superior Court. *See Capitol Hill Restoration Society, Inc.* [v. *Moore*], 410 A.2d [184,] 188 [(D.C.1979)]. We, of course, have jurisdiction to determine our own jurisdiction, and thus—like the Board—we must determine whether an "appeal" to the Board or a "protest" is at issue. In this sense our jurisdictional evaluation will entail an exploration, and virtual resolution, of the merits of Jones & Artis' case.

*Jones & Artis*, 549 A.2d at 318. We eventually held:

The Board correctly concluded that a "protest," not an administrative "appeal," is at the heart of this proceeding. Accordingly, the Board was not presented with a "contested" case. Nor are we. We are without jurisdiction here.

APPEAL DISMISSED.

*Jones & Artis*, 549 A.2d at 327.

*Int'l Bank*, 212 U.S.App.D.C. 188, 193, 659 F.2d 234, 39 (1981); *see Jones & Artis, supra*, 549 A.2d at 318. Indeed, every court has judicial power "to decide all questions, whether of law or fact, the decision of which is necessary to determine the question of jurisdiction." 21 C.J.S. § 88 at 104–05 (citing *Stoll v. Gottlieb*, 305 U.S. 165, 171–77, 59 S.Ct. 134, 137–40, 83 L.Ed. 104 (1938)). Accordingly, in some situations "the jurisdiction of the court to hear the case may depend ... upon the decision which it ultimately reaches on the merits." *Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682, 690, 69 S.Ct. 1457, 1461, 93 L.Ed. 1628 (1949) (citing *Land v. Dollar*, 330 U.S. 731, 739, 67 S.Ct. 1009, 1013, 91 L.Ed. 1209 (1947)); [8] *see Jones & Artis, supra*, 549 A.2d at 318. The jurisdictional and merits issues, on occasion, may turn out to be coextensive.

■■■ Applying these principles, we conclude that this court has jurisdiction to consider petitioner's contention that promulgation of § 716.9 by OHR contravenes the authority delegated to OHR by the governing statute. If petitioner is correct in her contention, then OHR lacked authority to deny her a trial-type hearing before the Human Rights Commission once probable cause was found. In deciding whether petitioner was erroneously denied that hearing, we appropriately exercise the jurisdiction necessary to decide whether a contested case hearing was improperly withheld. On the other hand, for reasons to be discussed in part V, *infra*, we conclude that we lack jurisdiction to review directly petitioner's challenge to OHR's application of § 716.9 to her case.

## IV.

Petitioner contends primarily that OHR lacked authority to condition her right to a post-probable cause hearing by the Commission upon a determination that intervenor had failed to offer her a remedy in conciliation that would have made her whole. Petitioner argues that OHR's rule in question— § 716.9—runs athwart an asserted clear statutory intent to make a hearing mandatory once probable cause has been found and (as in this case) there has been a "failure of conciliation efforts," § 1–2550, for any reason whatsoever. Petitioner points to § 1–2546(c), which provides that *"[u]pon agreement of all parties* to a complaint ... a conciliation agreement shall be deemed an order of the Commission" (emphasis added); this language is said to make clear that if *either* party to a complaint rejects conciliation, then conciliation efforts have "failed" under § 1–2550, and the complaint (probable cause having been found) must proceed to the Commission stage. We are not at all persuaded that petitioner's is the only permissible reading of the statutory phrase "failure of conciliation efforts."

It is now familiar law that,

[w]hen a court reviews an agency's construction of the statute which it administers, it is confronted with two questions. First, always, is the question whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress. If, however,

8. In *Land v. Dollar, supra*, stockholders of a steamship company delivered shares of the company's stock, endorsed in blank, to the United States Maritime Commission, which in turn released some of the stockholders from certain obligations and agreed to grant their company an operating subsidy, to make it a loan, and to arrange for another loan from a government corporation. When the company paid all its indebtedness, the stockholders demanded return of their stock, claiming it merely had been pledged. The Maritime Commission refused, claiming that the shares had been transferred outright. Under the law, if the shares had been transferred to the United States, the stockholders could not sue the government for their return

because of sovereign immunity, and thus the District Court would have lacked jurisdiction to entertain the suit. If, however, the shares had merely been pledged, the stockholders could properly sue the public officers as individuals for acting beyond the scope of their authority, and thus the District Court would have had jurisdiction. Accordingly, both the stockholders' right to recover and the trial court's jurisdiction turned on resolution of the same issue: whether the stock had been pledged or transferred outright. The Supreme Court held "that the District Court has jurisdiction to determine its jurisdiction by proceeding to a decision on the merits." *Id.*, 330 U.S. at 739, 67 S.Ct. at 1013.

the court determines Congress has not directly addressed the precise question at issue, the court does not simply impose its own construction on the statute, as would be necessary in the absence of an administrative interpretation. Rather, if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute.

*Chevron, U.S.A. v. Natural Resources Defense Council,* 467 U.S. 837, 842–43, 104 S.Ct. 2778, 2781–82, 81 L.Ed.2d 694 (1984) (footnotes omitted). *See Good Samaritan Hosp. v. Shalala,* —— U.S. ——, ——, 113 S.Ct. 2151, 2159, 124 L.Ed.2d 368 (1993). This court employs the same analysis. *See, e.g., Schlank v. Williams,* 572 A.2d 101, 107 (D.C. 1990); *Superior Beverages, Inc. v. District of Columbia Alcoholic Beverages Control Bd.,* 567 A.2d 1319 (D.C.1989); *Smith v. Department of Employment Servs.,* 548 A.2d 95, 97 (D.C.1988).

■■■■ We regard the statutory phrase "failure of conciliation efforts" as ambiguous. At least two reasonable interpretations of the phrase come to mind. One, which in effect looks only at the action of the complainant, would hold that if the complainant rejects a particular settlement offer for any reason or refuses to engage in conciliation from the outset, insisting instead upon a hearing before the Commission once probable cause has been found, then conciliation efforts have failed and a hearing must take place. The other interpretation—the one adopted by OHR—assumes a willingness of the complainant to conciliate and holds that conciliation has failed (assuming OHR has determined such efforts to be warranted) only if the *respondent* either has refused to take part in conciliation or has offered a settlement that will not in fact remedy the alleged discrimination, and the complainant rejects it. Whether OHR's interpretation is the only

or even the most reasonable construction of the words is beside the point. *Chevron,* 467 U.S. at 843 n. 11, 104 S.Ct. at 2782 n. 11; *Smith, supra.*[9] This court cannot say it is an unreasonable reading of the Act.

First, it is obvious that strong policies favoring compliance and settlement underlie the Act, which permits OHR, "*at any time* after the filing of the complaint" (emphasis added), *i.e.,* before or after probable cause has been found, to "endeavor to eliminate such unlawful discriminatory practice by conference, conciliation, or persuasion" if "in the judgment of the Office" the circumstances so warrant. § 1–2546(a). Similarly, § 1–2550 may plausibly be read to commit to OHR's judgment ("as determined by the Office") the twin determinations whether conciliation efforts are unwarranted to begin with or such efforts have failed. This broad statutory grant of authority would be undermined (or so the agency could reasonably maintain) by leaving with the complainant the unilateral decision whether to accept a make whole offer that in fact would undo the discrimination and its effects.[10] By the same token, adopting petitioner's interpretation would require the investigative and prosecutorial resources of OHR, which we may assume to be limited in a time of notorious government austerity, to be used to pursue a complaint through the formal adjudicatory stage even though a settlement offer has been made that would unarguably remedy the discrimination. *See* § 1–2552(b) (providing that at a hearing before the Commission "[t]he case in support of the complaint shall be presented by an agent or attorney *of the Office*" (emphasis added)).

Furthermore, the reasonableness of OHR's interpretation is confirmed when one considers the avenues of redress left open to the complainant both before and after a complaint is dismissed for refusal to accept a

---

9. As we stated in *Smith* and have said repeatedly elsewhere, "[W]e must sustain the agency's interpretation even if a petitioner advances another reasonable interpretation of the statute or if we might have been persuaded by the alternate interpretation had we been construing the statute in the first instance." 548 A.2d at 97.

10. The conceded fact that OHR may not *impose* a conciliation agreement on the parties without their consent, § 1–2546(c) (indeed, without their consent there would be no "agreement"), is very different from saying the agency lacks authority to dismiss when the complainant has rejected an adequate make whole offer.

make whole offer. We observed at the outset that the Act provides alternative avenues of redress for alleged discrimination, quoting *Brown v. Capitol Hill Club, supra.* Thus a person claiming injury through unlawful discrimination has total control initially over whether to seek relief in court or administratively. D.C.Code § 1–2556(a). Only when the latter course has been chosen has the person "elected" her remedy and is recourse to the trial court barred. *Id.; see Brown,* 425 A.2d at 1312. Even then, however, the Act provides that "where the Office has dismissed [a] complaint *on the grounds of administrative convenience,* . . . such person shall maintain all rights to bring suit as if no complaint had been filed." § 1–2556(a) (emphasis added).[11] OHR concedes in this litigation that a dismissal under § 716.9 of its rules is a dismissal "on the grounds of administrative convenience." That concession is unavoidable, for otherwise the Office would have no statutory authority to dismiss the complaint. *See* D.C.Code §§ 1–2545(c), –2556(a) (specifying grounds on which OHR may dismiss complaint). In *Honig v. District of Columbia Office of Human Rights,* 388 A.2d 887 (D.C.1978), a division of this court recognized that dismissal on the ground of "administrative convenience" "plainly envisages the authority to exercise prosecutorial discretion." *Id.* at 888. We agree with that analysis, and we regard a decision by OHR not to commit scarce prosecutorial resources to a trial-type hearing before the Commission, when in its judgment the complainant can be made whole informally, as a classic exercise of prosecutorial discretion.[12] Thus, a person whose complaint has been dismissed on grounds of administrative convenience retains the right "to bring suit as if no complaint had been filed." Moreover, as our holding in part V, *infra,* makes clear, the complainant desiring to persist with administrative resolution of her complaint retains the right to petition the Superior Court for review of OHR's grounds for denial of a hearing by the Commission.

## V.

We turn then to petitioner's challenge to the application of OHR's make whole rule to her case—specifically, her contention that the agency erroneously concluded that intervenor had made her an adequate (a genuine "make whole") offer which she had rejected. OHR renews its jurisdictional argument, contending that we lack contested case jurisdiction to review application of the rule to individual cases. Here we conclude that OHR is on sound footing. In analyzing whether petitioner had an unqualified statutory right to a hearing once probable cause was found, we perforce have had to exercise our jurisdiction. *See* part III, *supra.* The outcome of that analysis has been our conclusion that a dismissal under § 716.9 is authorized by D.C.Code § 1–2556(a) as a dismissal "on the grounds of administrative convenience." The fact, however, that this dismissal leaves the complainant with "all rights to bring suit as if no complaint had been filed," *id.,* calls squarely into question our authority to review directly—that is, on contested case review—the application of § 716.9 in any particular case. The reason is that the DCAPA, specifically D.C.Code § 1–1502(8), expressly excludes from the definition of a contested case "[a]ny matter subject to a subsequent trial of the law and the facts de novo in any court." This exclusion is unqualified; it does not, for example, deny this court jurisdiction only when a trial *de novo* is the "exclusive" remedy for asserted improper agency action—as though it were inoperative where direct review by this court

---

11. The same right is available where the complainant has withdrawn the complaint voluntarily in accordance with § 1–2544(a). *See* § 1–2556(a).

12. We reject petitioner's argument that OHR's present characterization of the dismissal as based upon grounds of administrative convenience is impermissible simply because dismissal for the complainant's refusal to accept a make whole offer is not among the enumerated reasons for "administrative dismissal" in OHR's rules of procedure. *See* Rules Governing Procedure, *supra* note 3, § 708.1. Petitioner was provided unmistakable notice by § 716.9 that refusal to accept a make whole remedy would subject her complaint to dismissal; the fact that the rules do not list that ground under the heading of "administrative dismissals" does not bar the agency from now characterizing a § 716.9 dismissal as what it inherently is.

could somehow otherwise be established as an available option. Section 1–1502(8) has the unmistakable effect that *some* agency action—including dismissal under § 1–2556(a)—is unreviewable directly by this court even though it may erroneously deprive the complainant of a trial-type administrative hearing.[13]

 The result of this jurisdictional bar is not to deny petitioner *any* judicial review of OHR's action; instead it is to deprive her of such review by this court in the first instance. In *Simpson v. District of Columbia Office of Human Rights*, 597 A.2d 392 (D.C.1991), a division held that a complainant may seek review in Superior Court of OHR's dismissal of a discrimination complaint for lack of probable cause. We conclude that the same remedy is available here. A complainant suffering a dismissal on grounds of administrative convenience may file an original complaint in Superior Court, or else she may seek review in that court of the propriety of OHR's dismissal; and if the outcome of such review is affirmance by the Superior Court, she may then seek review of that order by this court in the normal course. D.C.Code § 11–721(a)(1).[14]

## VI.

The petition for review is

*Dismissed.*

13. Judge Ferren's separate opinion asserts that we "never effectively explain[] why § 1–1502(8)(A) does not prevent this court from determining the general legal validity of § 716.9, rather than merely precluding our review of § 716.9 as applied." *Post* at 765. The explanation is evident: If § 716.9 provides for an "administrative convenience" dismissal—whether proper on the facts or not—then the complainant has an unqualified right to sue de novo in court, § 1–2556(a), thereby triggering § 1–1502(8)(A). But *unless* § 716.9 is reasonably characterized as such a dismissal (as we hold it is), then the complainant has an automatic post-probable cause right to a Commission hearing—and *only* that right since she has elected the administrative remedy. *Brown v. Capitol Hill Club, supra.* In other words, OHR's adoption of § 716.9 is a valid exercise of its delegated authority only if the regulation is properly classified as a dismissal for administrative convenience, a question

FERREN, Associate Judge, concurring in part and dissenting in part:

I agree with Part III of the majority opinion that this court has jurisdiction to decide the general legal validity of 4 DCMR § 716.9, see *ante* at n. 3, by virtue of our "jurisdiction to determine whether we have jurisdiction." *Ante* at 757–758. I also concur—halfway—with the majority's Part IV in that I agree, generally speaking, that § 716.9 incorporates a valid approach. I respectfully dissent, however, from definitively upholding § 716.9 at this time. I believe we cannot properly make that decision without a remand to ascertain the criteria and procedures the Office of Human Rights (OHR) uses in applying § 716.9, in order to be sure that OHR has not built into § 716.9 an arbitrary and capricious regime. Finally, I also respectfully dissent from the majority's Part V. I believe this court has jurisdiction to determine jurisdiction over the validity of § 716.9 as applied to the facts of petitioner's case, just as this court has jurisdiction to determine jurisdiction over the general legal validity of that regulation. Contrary to the majority's approach, D.C.Code § 1–1502(8)(A) does not come into play here.

## I.

In exercising jurisdiction to determine whether this court has jurisdiction over this appeal, we must determine (1) whether petitioner is entitled as a matter of law to a contested case hearing on her complaint,

whose answer is not "a given" (as Judge Ferren opines) but one we must decide before we know whether petitioner was wrongly denied a contested case hearing. We therefore have jurisdiction, as discussed in part III, *supra,* to decide the proper characterization of § 716.9, but once we have concluded that dismissal of petitioner's complaint *was* pursuant to § 1–2556(a) (leaving her free to pursue a trial de novo in court), § 1–1502(8)(A) compels us to stop.

14. The fact that, as Judge Ferren points out, if the complainant pursues judicial review in Superior Court and loses, she will have lost her right to file a suit de novo, *Brown, supra,* does not lead to the conclusion he urges—inapplicability of § 1–1502(8)(A)—because upon dismissal by OHR under § 1–2556(a), she preserved the unqualified right that deprives us of contested case jurisdiction: the choice *to* pursue a "trial of the law and facts de novo in ... court." § 1–1502(8)(A).

based on probable cause already found, or (2) whether petitioner is not entitled to such a hearing because OHR has lawfully adopted—and has lawfully applied—an agency regulation, 4 DCMR § 716.9, to dismiss the complaint without such a hearing. In order to make these determinations, we confront a series of questions:

1. Under the District of Columbia Human Rights Act of 1977, D.C.Code §§ 1–2501 to –2557 (1992), may a claimant, after a finding of probable cause on her complaint, unilaterally refuse to participate in conciliation, or at least refuse to accept every make whole offer, and thus force OHR to hold a contested case hearing on her complaint? I agree with the majority that the answer is "no."

2. If a claimant cannot unilaterally frustrate conciliation, does the statute permit OHR to adopt a regulation allowing the Director to dismiss a complaint for "administrative convenience," D.C.Code § 1–2556(a), after probable cause has been found, when a claimant causes conciliation efforts to fail by refusing to accept an offer the Director reasonably believes will make the claimant whole? Again, I agree with the majority; the answer, generally speaking, is "yes."

3. If the statute authorizes such a regulation, may OHR then (a) adopt the regulation—in this case, § 716.9—without spelling out criteria for applying it or defining terms such as "make whole," and (b) dismiss a complaint without at least an informal hearing and explicit findings as to why the offer would make the claimant whole?

4. If the answer to question 3, as the majority says, is "yes"—if § 716.9, as a general proposition, is legally valid despite the absence of specified criteria and required findings—then we confront the following question: even if § 716.9 is a legally valid regulation and thus appears on its face to preclude a contested case hearing, has OHR nonetheless *applied* the regulation to petitioner unlawfully, with the result that she is entitled to a contested case hearing at OHR on her discrimination complaint, just as she would be if the regulation were invalid *per se?* This question initially presents a jurisdictional inquiry. The majority answers that D.C.Code § 1–1502(8)(A) bars this court's

jurisdiction after we uphold the general validity of § 716.9. See *ante* Part V. I disagree. See *infra* Part III.

5. If, on the other hand, the answer to question 3 is "no"—if OHR cannot lawfully adopt § 716.9 without specified criteria and required findings, subject to this court's review—then the following question is presented: does the absence of specified criteria for evaluating both the make whole offer and the claimant's response to it, coupled with the absence of required findings, effectively nullify OHR's dismissal under § 716.9 and thus entitle petitioner to a contested case hearing at OHR? This question, while not raising a jurisdictional issue, presents questions about regulatory criteria and procedures that bear, initially, on the general legal validity of § 716.9 itself, not merely on the ability of a reviewing court to apply § 716.9 in this and other instances. The majority concludes that such criteria and procedures are not required. See *ante* Part IV. I believe that they are. See *infra* Part II.

Because questions about the general legal validity of § 716.9 must be resolved before questions are answered about the application of that rule, I will turn, first, in Part II to question 5 and thus defer to Part III the critical jurisdictional inquiry posed by question 4.

## II.

The Human Rights Act entitles a claimant to a contested case hearing on her discrimination complaint if there is a finding of probable cause and conciliation efforts have failed. *See* D.C.Code § 1–2550 (1992). I believe that OHR's § 716.9 may—or may not—be a lawful implementation of the statutory provision permitting dismissal for "administrative convenience," D.C.Code § 1–2556(a), when the claimant herself causes failure of conciliation. I agree with the majority that, generally speaking, § 716.9 incorporates a valid approach. See *ante* Part IV. Unlike the majority, however, I believe § 716.9 can be valid only if based on criteria and procedures that make clear OHR is functioning in a principled, consistent way that affords care-

ful inquiry into the facts and the claimant's right to be heard on a proposed dismissal.

More specifically, I conclude that the Human Rights Act itself, given its purposes and structure, implies that a § 716.9 approach cannot be applied so casually or flexibly that standards are not discernible. Once OHR has found probable cause to believe that a complaint of discrimination is sustainable, OHR cannot dismiss that complaint willy-nilly for administrative convenience (the only possible ground for dismissal here). Rather, OHR can dismiss only under reasonable criteria spelling out what a "make whole" offer is and explaining how an actual offer shall be evaluated. Only then will OHR be able to demonstrate that a claimant has caused conciliation efforts to fail by unreasonably rejecting a "make whole" offer that conforms to the prescribed criteria. Furthermore, the claimant must be afforded an opportunity to respond to the charges and evidence on which OHR proposes to rely in dismissing the complaint.

I agree with the majority that this process itself does not require a contested case (trial type) hearing; that would be counterproductive when conciliation is the concern. But, at the very least, any claimant who faces dismissal of a discrimination complaint after a finding of probable cause is entitled to know the criteria, and to have a chance to reply, before OHR pulls the plug for unreasonable failure to cooperate with a conciliation effort that seeks to compromise the claimant's rights.[1]

In this fundamental respect I respectfully disagree with the majority, who liken OHR's dismissal to the exercise of prosecutorial discretion. *Ante* at 760. "Discretion signifies choice[, *i.e.*, ] the ability to choose from a range of permissible conclusions." *Johnson v. United States*, 398 A.2d 354, 361 (D.C. 1979). More specifically:

> The decision-maker can rely largely upon his [or her] own judgment in choosing among the alternatives. Although the act of choosing will be guided by various legal and other considerations, the decision-maker, and not the law, decides.

*Id.* The right to make a discretionary decision grants the decision-maker considerable leeway, therefore, and is reviewable, if at all, only for "abuse of discretion." *See id.* at 363–67.

As I understand the Human Rights Act, the time for exercising prosecutorial discretion to dismiss an OHR complaint must precede a finding of probable cause. The idea that OHR could dismiss a discrimination proceeding as a matter of "discretion" after a finding of probable cause is antithetical to the statute and to § 716.9. That regulation, see *ante* at 756, requires findings as to whether a "respondent offers a remedy that would place complainant in the same position that complainant would have been in had the alleged discriminatory practice not occurred," *ante* at 756, as well as findings as to whether the "complainant refuses to accept such offer." *Ante* at 756. This language requires the application of objective standards for judging the offer and refusal to accept. The OHR Director is not given authority to apply that language in pending cases, as a matter of discretion, in the way that OHR, for example, may apply a discretionary policy not to exercise jurisdiction over a complaint when it finds an insufficient nexus between a respondent and the District. *See Honig v. District of Columbia Office of Human Rights*, 388 A.2d 887 (D.C.1978). Rather, the Director must be held to objective criteria in deciding whether to withdraw a complainant's statutory right to a contested case hearing by dismissing the complaint pursuant to § 716.9.

As I see it, therefore, once the agency has accepted a claimant's election to go the administrative route—*i.e.*, once OHR has taken jurisdiction of the complaint and found probable cause—OHR has no statutory discretion whatsoever to dismiss for administrative convenience unless the claimant herself, according to an objective appraisal, unreasonably fails to cooperate with the process, including conciliation. Consequently, unless OHR is

---

1. I believe it is too late now for petitioner to claim that class-wide relief should be required in this case as part of a make whole offer, for petitioner did not include such a claim in her complaint.

held to criteria and procedures for judging the complainant's response to conciliation (with its "make whole" offers), the objective statutory process for resolving complaints of discrimination can easily be reduced—arbitrarily and capriciously—to a subjective, discretionary resolution of a complaint that otherwise, based on probable cause, was headed by statutory command to a contested case hearing. I believe that the majority's analysis fosters such an arbitrary, subjective result—an unlawful result.

Accordingly, I conclude that at a minimum we should remand this case for OHR to articulate its criteria and procedures under § 716.9 so that we can determine whether OHR truly made a rational and fair decision on whether conciliation failed solely because of petitioner's fault. Included in such procedures must be the right of a claimant to respond to a proposed dismissal, as well as required findings that clearly explain OHR's reasoning and give the reviewing court a clear basis for understanding OHR's action.

Inherent in this analysis are the following propositions: (A) if, after remand, the case were returned to this court and we were to decide that the regulation fell short, OHR's dismissal of petitioner's complaint would not be appropriate, the claimant would be entitled to a contested case hearing at OHR, and we would thus take jurisdiction, "reverse," and remand again for the required hearing. (B) If, however, after remand, we were to conclude that the § 716.9 criteria and procedures are valid, we would inquire into whether, in fact, OHR followed those procedures and properly applied the criteria. (1) If we answered "yes," petitioner would not be entitled to a contested case hearing and we would "dismiss" for lack of jurisdiction. (2) If, however, we answered "no," concluding that OHR did not properly apply § 716.9 to the facts, we would hold that petitioner was entitled to a contested case hearing based on previously found probable cause. We would then take jurisdiction, "reverse," and remand again for the required trial type hearing.

Even if the majority were to agree with me that a remand to discover OHR's § 716.9 criteria and procedures is required before we can rule on the general legal validity of that regulation, the majority has rejected the proposition I advance in subparagraph (B) immediately above: that this court has jurisdiction to determine whether we have jurisdiction over § 716.9 as applied. See *ante* Part V. I therefore turn to that remaining jurisdictional issue.

## III.

### A.

I understand the majority's position to be as follows:

1. OHR promulgated a regulation, § 716.9, which it has used to deny petitioner a contested case (trial type) hearing to which she otherwise would have been entitled, and to dismiss her complaint, after finding probable cause.

2. There is a serious question whether § 716.9 is lawful under the Human Rights Act, either in general or as applied to petitioner.

3. This court has jurisdiction under the District of Columbia Administrative Procedure Act (DCAPA), D.C.Code §§ 1–1510 to –1542 (1992), to review agency action not only when a contested case hearing has taken place but also when a party has made an effort to obtain such a hearing which the agency erroneously denied.

4. This court, therefore, will have jurisdiction over this case if, but only if, (1) § 716.9 is inherently unlawful, *i.e.*, in contravention of the Human Rights Act, or (2) § 716.9—while not inherently unlawful—is unlawfully applied to petitioner. In either case, this court will have jurisdiction to grant relief because petitioner is entitled to a contested case hearing at OHR, rather than subject to dismissal of her complaint.

5. Because every court has jurisdiction to determine its own jurisdiction, this court has jurisdiction to determine whether § 716.9 is inherently unlawful and, for that reason, whether OHR erroneously denied petitioner a contested case hearing. In other words, this court has jurisdiction to answer question 4(1) immediately above.

6. If, however, this court answers question 4(1) by determining that § 716.9 is not inherently unlawful (although, of course, it can be applied unlawfully from time to time), then there will be occasions when OHR can lawfully apply § 716.9 to dismiss the complaint, and the claimant, accordingly, will not be entitled to a contested case hearing. After making the question 4(1) inquiry, the majority has sustained the general validity of § 716.9.

7. The majority recognizes, however, that a jurisdictional question remains: whether the claimant is entitled to a contested case hearing because OHR has unlawfully *applied* § 716.9. According to the majority, this court's jurisdiction to determine its jurisdiction over § 716.9 as applied is precluded by D.C.Code § 1–1502(8)(A). Specifically, the majority reasons that, because a § 716.9 dismissal is for administrative convenience, and because that kind of dismissal leaves petitioner with a statutory right to bring her complaint to Superior Court for a trial *de novo*, § 1–1502(8)(A) bars any direct (contested case) review by this court: "[t]he term 'contested case' ... shall not include (A) [a]ny matter subject to a subsequent trial of the law and the facts *de novo* in any court." *Id.* See *ante* Part V.

### B.

The majority's bifurcation of our jurisdiction to determine jurisdiction, allowing inquiry into the general legal validity of § 716.9 but not into its validity as applied, is legally defective. Before turning to legislative history and case law, I outline my response to the majority's analysis.

Initially, it is important to note that, but for § 1–1502(8)(A), the majority would agree that this court has jurisdiction to determine whether we have jurisdiction over § 716.9 as applied, just as we have jurisdiction to determine our jurisdiction over the general legal validity of § 716.9. There is no principled basis that anyone has identified for otherwise limiting our jurisdictional scrutiny over whether § 716.9 stands in the way of a contested case hearing. The majority accordingly has an obligation to explain very clearly why § 1–1502(8)(A) bars our jurisdiction to determine jurisdiction halfway through the analysis, permitting us to appraise the general legal validity of § 716.9 but not its application.

The first problem with the majority analysis, therefore, is that it never effectively explains why § 1502(8)(A) does not prevent this court from determining the general legal validity of § 716.9, rather than merely precluding our review of § 716.9 as applied. Why doesn't the possibility of an inherently unlawful dismissal for administrative convenience—*i.e.*, the possibility of the *per se* invalidity of § 716.9—trigger the § 1–1502(8)(A) bar? After all, any dismissal for administrative convenience, according to the majority, leaves the complainant free under the statute to elect at any time either a trial *de novo* or judicial review in the Superior Court, see *ante* at 760–761, whether that dismissal is lawful or not. If, as the majority says, § 1–1502(8)(A) bars this court's direct review when a § 716.9 dismissal may or may not be lawful as applied, then I see no sound reason why § 1–1502(8)(A) does not also bar our direct review when a § 716.9 dismissal may or may not be invalid *per se*.[2]

**2.** The majority adds, in a footnote response to this dissent, that this court has jurisdiction to review the general legal validity of § 716.9, but not the validity of § 716.9 as applied, because there is an immediate need to determine whether a § 716.9 dismissal is for "administrative convenience." See *ante* at 761 n. 13. Why this immediate need? Because, says the majority, that kind of dismissal, if valid, would trigger the right to a trial *de novo* and thereby erect the § 1–1502(8)(A) barrier to this court's direct review. This response says nothing of consequence, however. Inherent in the majority's footnoted explanation are two assumptions: that there is an immediate need to determine (1) whether the

dismissal is for "administrative convenience" *and* (2) whether the § 716.9 type of dismissal is valid. Both assumptions are fallacious. First, because the dismissal is post-probable cause, the only possible basis for dismissal is "administrative convenience." See D.C.Code § 1–2556(a); *Brown v. Capitol Hill Club*, 425 A.2d 1309, 1312 (D.C.1981). That is a given. Second, in order for a complainant to have a trial *de novo* upon a dismissal for administrative convenience, it does not matter whether the regulation (§ 716.9) ostensibly justifying the dismissal is valid or invalid. Under the plain language of D.C.Code § 1–2556(a), unless the complainant elects judicial review to challenge the OHR dismissal, the trial

There is a second, even more important reason why the majority's position is unsound. Section 1–1502(8)(A) does not apply, whether this court considers *per se* invalidity or *ad hoc* invalidity of § 716.9, for one very simple reason: it is not yet clear whether petitioner—who still is pursuing a claim for judicial review of § 716.9—will ever have a *de novo* trial court remedy. As long as petitioner is actively seeking judicial review and thus § 716.9 is still possibly invalid—whether inherently so or as applied—the trial *de novo* option is not yet "real," or "ripe." Clearly, under the Human Rights Act, a complainant cannot pursue both judicial review and a trial *de novo* ; these two remedies "are mutually exclusive." *Arthur Young & Co. v. Sutherland,* 631 A.2d 354, 371 n. 34 (D.C. 1993); *Brown v. Capitol Hill Club,* 425 A.2d 1309, 1312 (D.C.1981); *ante* at 753, 759–760.

There is, of course, one way that petitioner could obtain a trial *de novo* upon OHR's dismissal of her complaint under § 716.9: she could forfeit her right to judicial review of OHR's ruling. That, however, is not a sound basis for saying that a trial *de novo* is truly available, within the meaning of § 1–1502(8)(A), because that would mean this court's jurisdiction would be determined by imputing to petitioners an election (trial *de novo* over judicial review) that she never made pursuant to D.C.Code § 1–2556(a). The majority has not presented any persua-

sive justification for believing § 1–1502(8)(A) applies even though that statutory application would force a petitioner to surrender a right (judicial review) to obtain a right (trial *de novo* ).[3]

In sum, the majority, in reality, uses the *contingent* availability of a trial *de novo* to bar this court's exercise of jurisdiction to determine jurisdiction. A contingent trial *de novo* does not meet § 1–1502(8)(A)'s inherent premise that a trial *de novo* must actually be available. As elaborated below, the legislative history and case law reveal that § 1–1502(8)(A) is actually irrelevant to this case. As a result, this court has as much authority to decide the validity of § 716.9 as applied as we do to resolve the rule's inherent legal validity.

**C.**

After years of efforts by the Bar Association of the District of Columbia to reform the procedures applicable to administrative proceedings under District law, the Bar Association and the staff of the House District Committee collaborated on a bill to create the District of Columbia Administrative Procedure Act (DCAPA). H.R. 7067, incorporating the proposed DCAPA, was introduced on April 1, 1965, and considered at a subcommittee hearing on July 6, 1965. *See Administrative Procedure Act: Hearing on H.R. 7067 Before Subcommittee No. 4 of the*

*de novo* option is automatically available, whether the § 716.9 dismissal is valid or not, either inherently or applied. I do not understand the majority to claim otherwise. The majority, therefore, has offered no sound reason why, if § 1–1502(8)(A) bars our jurisdiction to determine jurisdiction over § 716.9 as applied, it does not also bar such jurisdiction over the inherent legal validity of § 716.9.

The fact is, the majority's reasoning here cuts against its resolution of this appeal. If this court has jurisdiction to determine the general legal validity of § 716.9, because of the need to determine at the outset whether petitioner is entitled to judicial review in this court or to a trial *de novo* in Superior Court, then there is no less reason for this court to have jurisdiction over § 716.9 as applied. Until that question, too, is resolved, we will not be able to know whether a trial *de novo*—triggering a § 1–1502(8)(A) bar—is available to a claimant, like petitioner, who is claiming instead the right to keep her OHR com-

plaint alive by pursuing judicial review. *See* D.C.Code § 1–2556(a) (1992).

**3.** In a cryptic footnote 14 responding to this opinion, the majority effectively acknowledges its position that § 1–1502(8)(A) applies even though its application means the court deems petitioner to have abandoned her right to judicial review of OHR's action. By taking the position that, "upon dismissal by OHR under § 1–2556(a), [petitioner] preserved the unqualified right,"—*i.e.,* the "choice"—of pursuing a trial *de novo, ante* at 761 n. 14, the majority knows that petitioner could have done so only by surrendering her right to continue pursuing her judicial review remedy, as the plain language of D.C.Code § 1–2556(a) makes clear. But, of course, petitioner never surrendered that right; she never tried to "preserve[ ]" a trial *de novo* option. The majority never effectively explains why it deems § 1–1502(8)(A) to apply by imputing a surrender of a judicial review right that petitioner has never intended to give up.

*House Committee on the District of Columbia,* 98th Cong., 1st Sess. (1965).[4] During discussion of the provision that became D.C.Code § 1–1502(8)(A), see *supra* note 4, Alfred L. Scanlan, Esq. testified on behalf of the Bar Association in favor of the legislation. A member of Congress asked Mr. Scanlan: "Under the definitions ..., section (A) ... excludes from the definition of 'contested case,' 'any matter subject to a subsequent trial of the law and the facts de novo in any court.' What types of cases did you have in mind when you put that exclusion in the bill?" *Id.* at 66. Mr. Scanlan replied:

> That would be a case where, by present statute, the record of the decision of the agency was tried again before the court. In other words, you would have a regular trial and evidence would be introduced by both sides. The majority of hearings involve appeals from administrative decisions based on the record compiled before the agency, but there are a few isolated cases where the statute would provide for judicial review de novo, which would mean the court then would sit in judgment and find the facts. It could disregard completely the findings of fact that might have been made in the administrative proceeding. We did not want to change that because there the particular litigant already had protection. If he was going to get a second shot at it in the form of a trial de novo, then there was no need to impose these further restrictions on the agency, since the court was going to look at it afresh anyway.

*Id.* The same member then asked, "You say there are not many of those?" and Scanlan replied, "There are not many of those." *Id.* A different member commented, "You certainly would not want to give up the few cases where you do have the trial de novo." *Id.* Scanlan responded: "That is correct. As a matter of fact, the suggestion was made we go the other way and in effect have all tried de novo. That would mean that every-

one who lost below would have a second shot at it." *Id.*

The clear import of Mr. Scanlan's remarks was that § 1–1502(8)(A) was intended to preclude direct judicial review in the court of appeals in the relatively few cases in which the legislature had provided a trial *de novo,* instead of judicial review, as the avenue of relief from an administrative ruling. There was no hint of any consideration of what might happen—as in this case—when a court concluded that a party was entitled to elect either judicial review or a trial *de novo* ; the assumption underlying Mr. Scanlan's remarks was that § 1–1502(8)(A) applied to cover the only recognized situation: when the legislature had provided a trial *de novo* as the only—the exclusive—way to challenge agency action.

At the hearing, the House subcommittee also heard an example of what Mr. Scanlan had in mind. Robert F. Kneipp, Esq., then an Assistant Corporation Counsel who testified in opposition to the bill, confirmed Mr. Scanlan's understanding of the legislation:

> One category of cases that very definitely is excluded is that relating to the condemnation of insanitary buildings. Under the existing law in the District, an action condemning a building is subject to a trial de novo in the District of Columbia court of general sessions, but that would not be a contested case within the meaning of the bill. Then, of course, the provision of the bill relating to contested cases would not apply in this very significant matter of condemning a building for insanitary reasons.

*Id.* at 70. Mr. Kneipp was referring to D.C.Code §§ 5–628, –629 (1967), which provided, respectively, for the right to seek administrative review by the Condemnation Review Board of an order by the Board for the Condemnation of Insanitary Buildings, followed by a trial *de novo* in Superior Court.

4. The District of Columbia Administrative Procedure Act (DCAPA), D.C.Code §§ 1–1501 to –1542 (1992), is traceable to Pub.L. No. 90–614, 82 Stat. 1204 (Oct. 21, 1968), which had earlier been introduced in 1965 as H.R. 7067. *See generally Administrative Procedures for the District of Columbia: Hearing on S. 1379 and H.R. 7417*

*Before the Subcommittee on the Judiciary of the Senate Committee on the District of Columbia,* 90th Cong., 2d Sess. 74–75 (1968) (statement of Alfred L. Scanlan, Chair, Administrative Law Section, Bar Association of the District of Columbia). The language of § 1–1502(8)(A) today is the same as the 1965 and 1968 versions.

*See Urciolo v. Washington,* 305 A.2d 252, 254 & nn. 4 & 5 (D.C.1973).[5]

**D.**

Consistent with the legislative history, the case law development—until today—reflects application of § 1–1502(8)(A) when a trial *de novo,* not direct judicial review, is the only prescribed remedy for agency action. The first case to rely on that provision was *Chevy Chase Citizens Ass'n v. District of Columbia Council,* 327 A.2d 310 (D.C.1974) (en banc), in which we dismissed for lack of jurisdiction a petition to review a street closing by the Council of the District of Columbia. Citing § 1–1502(8)(A), we held that, although the compensation phase of the proceeding consisted of a trial type hearing, which would ordinarily present a contested case, the fact that the compensation decision was "subject to a trial *de novo* in Superior Court," *id.* at 316, precluded direct review by this court. This case precisely reflected the use of § 1–1502(8)(A) anticipated by Messrs. Scanlan and Kneipp.

Our case law then turned to consideration of petitions dismissed by an agency for lack of probable cause: what review of that decision, if any, was possible? In *O'Neill v. District of Columbia Office of Human Rights,* 355 A.2d 805 (D.C.1976), the agency dismissed, for lack of probable cause, a complaint for "racial prejudice on the job" brought under Commissioner's Order 71–26 (Feb. 2, 1971). *Id.* at 807. Rather than dismiss, as the Corporation Counsel urged, on the ground that the proceeding was not a contested case for lack of a required trial type hearing, this court dismissed under § 1–1502(8)(A) because the petitioner had a *de novo* trial court remedy under the Civil Rights Act of 1964, which had been amended in 1972 to cover District government employees as well as those of other state and local governments. *See id.* at 807–08.

Five years later, however, construing the newly adopted Human Rights Act of 1977, this court in *Brown,* 425 A.2d 1309, held that a complainant who pursued an administrative remedy through OHR was precluded, after a finding of no probable cause, "from instituting a de novo proceeding on the same matter in court." *Id.* at 1312. The statute provided for an election of remedies, permitting recourse to a *de novo* court proceeding only in two situations: (1) if the petitioner had withdrawn the complaint before the agency acted, or (2) if the agency had dismissed the complaint for "administrative convenience." *See* D.C.Code § 1–2556(a); *Brown,* 425 A.2d at 1312.

Because *Brown* affirmed dismissal of a complaint filed in Superior Court seeking a trial *de novo* on a discrimination complaint, whereas *O'Neill* dismissed an appeal seeking judicial review in this court of the agency's dismissal of a discrimination complaint, the decisions were not inconsistent with each other. *Brown* dealt with the provision of the 1977 Act barring a trial *de novo* after a finding of no probable cause; *O'Neill* focused on the availability of a trial *de novo* in federal court after a finding of no probable cause.

Three years after *Brown,* however, inconsistency crept into our case law. In *Lamont v. Rogers,* 479 A.2d 1274 (D.C.1984), we held under the 1977 Act that a petition for review of agency findings of no probable cause for complaints of sexual discrimination and retaliation failed for lack of a contested case. Citing *O'Neill,* we concluded that § 1–1502(8)(A) precluded jurisdiction because the petitioner had the right to a trial *de novo* on these complaints under Title VII of the Civil Rights Act of 1964. *See Lamont,* 479 A.2d at 1276–77. We further held, however, that this court also lacked jurisdiction over administrative complaints for discrimination based on personal appearance and family responsibilities, for which there was no Title VII remedy triggering an *O'Neill* bar. We reasoned that, since no trial-type hearing was required upon a finding of no probable cause, there was no contested case. *See id.* at 1277–78. We therefore added that "even if *O'Neill* were not on the books, this court would have no jurisdiction to review the dismissal of any of petitioner's claims. Her

---

5. Under current law, appeals from the Condemnation Review Board come directly to this court.

*See* D.C.Code § 5–714 (1988).

only recourse is a civil action in the Superior Court." *Id.* at 1278. That is where inconsistency surfaced. It is one thing to acknowledge the petitioner's right to file her sex discrimination and retaliation claims under Title VII of the Civil Rights Act of 1964; *Brown* is not implicated by that. It is another thing, however, to suggest—after *Brown*—that the petitioner's other discrimination claims, cognizable only under the Human Rights Act of 1977, could be pursued *de novo* in Superior Court after dismissal for lack of probable cause. In that respect, *Lamont* implicitly repudiated *Brown*.[6] In any event, *Lamont, Brown,* and *O'Neill* were dealing with cases in which the agency had found no probable cause and for which no judicial review of any kind was recognized as an available alternative to a trial *de novo.* All three cases proceeded from the premise that, if any relief from the agency ruling was available, it was a court trial *de novo.*

Then came *Simpson v. District of Columbia Office of Human Rights,* 597 A.2d 392 (D.C.1991). There, we held that a petitioner may seek judicial review in Superior Court of OHR's dismissal of a discrimination complaint for "no probable cause," even though a trial *de novo* in Superior Court, after *Brown,* is no longer an available remedy. For the first time, therefore, this court introduced the notion that agency action dismissing a discrimination complaint can be judicially reviewable, at least when dismissal is for lack of probable cause. *Id.* at 397. By citing *Brown* rather than *Lamont,* the court in *Simpson* did not have to deal with the § 1–1502(8)(A) issue; the possible availability of a *de novo* trial court remedy was rejected out of hand. Furthermore, in dicta, *Simpson* introduced a possible complication. In referring to *Brown,* this court strongly implied in *Simpson* that an administrative convenience dismissal, in contrast with a dismissal for lack of probable cause, cannot trigger judicial review; the only available relief appeared to be a trial *de novo. See Simpson,* 597 A.2d at

398. The majority today, however, sitting en banc, makes clear—and I agree—that at least as to OHR dismissals for administrative convenience *after* a finding of probable cause, both judicial review and a trial *de novo* are available, alternative remedies.[7]

### E.

The question, then, is this: when, for "administrative convenience," OHR dismisses a complaint after a finding of probable cause, and the complainant concededly has the options of seeking either judicial review or a trial *de novo,* does the availability of the latter automatically preclude judicial review in this court (in contrast with judicial review in the Superior Court)?

Neither *O'Neill* nor *Lamont* addressed this question, not only because both cases dealt with dismissals for lack of probable cause but also, more importantly, because they implicitly assumed that judicial review of any kind was unavailable simply because a trial *de novo* was possible. In *Simpson,* we rejected that assumption. We held that judicial review was available in Superior Court when OHR dismissed for lack of probable cause, even though the 1977 Act, as interpreted in *Brown,* precluded a trial *de novo* there. Citing both *Lamont* and *Brown,* but not adverting to their inconsistency with one another, this court in *Simpson* relied on both of them. We used the spirit of *Lamont* to say that, in the absence of contested case review in this court, there must be a Superior Court remedy; we used *Brown* to say that, because a trial *de novo* is unavailable, the Superior Court remedy must be limited to judicial review of agency action.

In the present case, we consider two new situations. *First,* the en banc majority recognizes that, upon dismissal for administrative convenience after a finding of probable cause, there are two alternative remedies: judicial review and trial *de novo.* Unlike the

---

6. *Lamont* did not cite *Brown.*

7. I agree with the majority conclusion about concurrent alternative remedies (except, as elaborated below, for the majority's limitation to judicial review in Superior Court). I do not believe *Simpson* stands in the way of a concur-

rent remedy analysis because *Simpson* did not consider dismissal for administrative convenience after a finding of probable cause; in context, this court in *Simpson* was hypothetically addressing a dismissal before OHR ruled in any way on the complaint.

"no probable cause" situations in *O'Neill, Brown, Lamont,* and *Simpson,* there is, in this case, a type of dismissal—"administrative convenience"—that under the governing statute does not limit the complainant to one avenue of relief. *Second,* there is a question in this case whether petitioner is entitled to a contested case hearing because of a misapplication of § 716.9, in contrast with our other four decisions where, absent a finding of probable cause, there was never a suggestion that complainant could have a contested case hearing.

Today, the en banc court holds among other things—and I agree in this respect—that

> this court has jurisdiction not only when a contested case (trial-type) hearing has taken place, but also when a party has made "an effort to obtain such a hearing which the agency erroneously denied." *Auger v. District of Columbia Board of Appeals and Review,* 477 A.2d 196, 206 (D.C.1984). That is, we have authority to order a contested case hearing, or at least to preserve the right to such a hearing, *when an agency erroneously withholds that right.*

*Ante* at 756–757 (emphasis added).[8] This court accordingly holds, under the principle of jurisdiction to determine our jurisdiction, see *ante* at 757–758, that we have authority to determine whether OHR's very promulgation of § 716.9 erroneously withheld petitioner's right to a contested case hearing. In

answer to that question, the majority then holds that § 716.9 is not inherently invalid. The narrow question remaining, therefore, is whether, after concluding that § 716.9 is not inherently invalid, this court also has authority, under the principle of jurisdiction to determine jurisdiction, to determine whether § 716.9 *as applied* to petitioner erroneously withheld her right to a contested case hearing.

The answer has to be yes. Because we are dealing with jurisdiction to determine jurisdiction—*i.e.,* jurisdiction to determine whether a contested case hearing has been erroneously withheld or not—§ 1–1502(8)(A) does not even come into play. As the majority recognizes, any court has jurisdiction to determine its own jurisdiction, including jurisdiction to decide all issues, factual and legal, necessary to resolve jurisdiction. See *ante* at 757–758. Thus, that kind of jurisdictional exercise by this court cannot be stopped in its tracks by § 1–1502(8)(A) unless this provision means that, even if petitioner would be entitled to the trial type hearing she seeks at OHR (giving us contested case jurisdiction), the very existence of a trial *de novo* alternative—*before the OHR hearing issue is resolved*—absolutely precludes our jurisdiction. That cannot be the case.

*First,* the legislative history shows that § 1–1502(8)(A) is intended to come into play only when a trial *de novo* is a complainant's

---

**8.** Judge STEADMAN takes the position that this court has jurisdiction only if an agency trial-type hearing has taken place. See *post* at 780–81. I agree with the majority view rejecting this position. See *ante* Part III. Judge STEADMAN apparently premises his analysis, in substantial part, on the belief that this court's taking jurisdiction to determine jurisdiction, *i.e.,* our inquiry into "whether a right to a [contested case] hearing has accrued[,] ... may very well depend upon a factual inquiry, for which a trial court is plainly fitted and an appellate court not at all." *Post* at 781. This is not a problem. Any fact-finding essential to our ruling on the validity of § 716.9 can be achieved through a remand to OHR, as needed. That is the way judicial review of agency action always takes place; this court need not find facts. Furthermore, even when the trial court conducts judicial review of agency action, that court must remand for the agency to find facts, rather than take testimony itself. In *Kegley v. District of Columbia,* 440 A.2d 1013

(D.C.1982), we held "that the scope of review in the Superior Court of a decision made by the [Metropolitan Police Department] Trial Board is the same as this court's scope of review of a contested case under the DCAPA." *Id.* at 1018. Thus, the trial court must apply the " 'substantial evidence' standard in reviewing decisions of the Trial Board. *It must review the administrative record alone and not duplicate agency proceedings or hear additional evidence." Id.* (emphasis added). Implicitly, therefore, we have ruled in *Kegley* that the trial court, when exercising judicial review, must remand to the agency for additional fact-finding in the absence of an adequate record. Judge STEADMAN's preference for judicial review by the trial court, based on its traditional role as fact-finder, is therefore based on a false premise; trial court review of an agency ruling (in contrast with a trial *de novo* ) would apply a standard of review no different from this court's review.

exclusive remedy or, at the very least, is assuredly available. *Second*, the majority has provided no basis for concluding that § 1–1502(8)(A) applies when the availability of a trial *de novo* depends on a complainant's forfeiture of her asserted right to judicial review. See *supra* note 3. *Third*, if, as it turns out, the reviewing court were to conclude that the complainant was entitled to a trial type OHR hearing on the discrimination complaint because § 716.9 had been applied unlawfully, then no trial *de novo* would be available because the complainant had lawfully opted instead for judicial review and thus for continued, exclusive involvement in the administrative process.

In sum, the majority's entire argument is premised on the contingent availability of a trial *de novo* that may turn out to be unavailable if judicial review vindicates petitioner's contention that OHR unlawfully dismissed her complaint. To the contrary, § 1–1502(8)(A) does not come into play unless and until petitioner, after judicial review of OHR's dismissal, loses her right to a trial type hearing at OHR and thus assuredly gains a trial *de novo* remedy. If the majority's premise were correct—if § 1–1502(8)(A) could bar this court's review *before* petitioner's right to a trial type hearing at OHR were definitively resolved—then § 1–1502(8)(A) would apply in a way that compels petitioner to forfeit her right to judicial review. I cannot believe the legislature intended that result.

In my view, both the Superior Court and this court have jurisdiction to determine jurisdiction over this case. In this sense, both courts share a conceptually limited, concurrent jurisdiction to determine jurisdiction by deciding whether a claimant is entitled to a contested case hearing.[9] Ultimately, if

§ 716.9 is not held inherently invalid, this jurisdictional inquiry by either court would not end until the court resolved whether OHR had properly applied § 716.9 on the facts here. (My proposed remand for OHR to provide criteria and procedures under § 716.9, see *supra* Part II, would make judicial review, in the first instance, considerably easier.) Until the question of § 716.9 *as applied* is resolved here, petitioner's right to a trial *de novo* will not be known, given the kind of relief—judicial review—she seeks. I do not believe that petitioner's obvious right to forego the judicial review she has elected, in favor of a trial *de novo* she has rejected, triggers a § 1–1502(8)(A) bar on this court's jurisdiction to determine jurisdiction. Surely the legislature never had this compelled forfeiture of judicial review in mind.

ROGERS, Chief Judge, with whom MACK, Senior Judge, joins, concurring in part, dissenting in part:

In my view the majority correctly concludes that the court has jurisdiction to decide whether or not the Department of Human Rights has unlawfully withheld from Ms. Timus her right to a hearing before the Human Rights Commission under D.C.Code § 1–2550 (Repl.1992).[1] *See* D.C.Code § 1–1510(a)(2) (Repl.1992). Specifically, I join Part III of the majority's opinion (except for the last sentence), *see supra* 756–758 concluding that the court has jurisdiction to determine whether or not it has jurisdiction and to determine whether Regulation 716.9 (33 D.C. Reg. 6917 (1986)) is valid.[2]

With regard to Regulation 716.9, the Department of Human Rights acted, in my view, beyond its authority in promulgating it. As supplemented herein, Judge Mack's opin-

---

9. The trial court's decision, of course, would be appealable to this court.

1. The hearing before the Commission may be a hearing before a hearing examiner, who, in turn, will file a report of findings with the Commission. *See Stevens Chevrolet v. Commission on Human Rights*, 498 A.2d 546, 548 (D.C.1985); D.C.Code § 1–2551(a). At the time Ms. Timus filed her complaint, the Department of Human Rights and Minority Business Development was called the Office of Human Rights. *See* Mayor's Order 89–247, November 1, 1989 (renaming Of-

fice). In this opinion, all references are to the Department of Human Rights or the Department.

2. Because, in my view, Regulation 716.9 is invalid, I need not reach the issue posed by the last sentence of the majority's opinion nor address the jurisdictional issue raised in Part III(b) Judge Ferren's opinion regarding jurisdiction to consider the regulation as applied. However, I agree with Judge Ferren's critique of Judge Steadman's opinion. *See supra* opinion of Judge Ferren at 770 n. 8.

ion for the division sets forth the reasoning for the conclusion that the make-whole regulation is invalid. *See infra* opinion of Senior Judge Mack. To conclude that the regulation is valid, *see supra* Part IV of the majority opinion, is to grant to the Department powers beyond the limited rule-making authority delegated to it by the legislature.[3] To require the Department to develop objective standards for application of Regulation 716.9, as Judge Ferren proposes, would accomplish nothing since it could not give validity to the rule promulgated without authority. *See supra* opinion of Judge Ferren at 763. Moreover, the rule is drafted in contravention to the legislative scheme to encourage (but not compel) efforts to conciliate by protecting the confidentiality of such efforts.[4] Rather, in my view, because the words used in the D.C. Human Rights Act evince the intent to authorize voluntary conciliation, the Department of Human Rights was without authority to promulgate a regulation that would deny an administrative remedy to a complainant who declines to accept a make-whole offer by the respondent during conciliation efforts under D.C.Code § 1–2546 after the Department has found probable cause to believe that the complaint states a claim of unlawful discrimination in violation of the statute.

The court must apply the plain meaning of the language used in the statute, applying to the words "their ordinary sense and with the meaning commonly attributed to them." *See Peoples Drug Stores v. District of Columbia,* 470 A.2d 751, 753 (D.C.1983) (en banc) ("The primary and general rule of statutory construction is that the intent of the lawmaker is to be found in the language that he [or she] has used") (citations omitted). The language of the provision on conciliation in the Human Rights Act authorizes the Department "at any time after the filing of the complaint, [to] endeavor to eliminate such unlawful discriminatory practice by conference, conciliation, or persuasion." D.C.Code § 1–2546(a). An en-

deavor entails effort but not necessarily success; it is an attempt, no more and no less. *See* WEBSTER'S NINTH NEW COLLEGIATE DICTIONARY (1985 ed.) at 410. By use of the word "endeavor," the legislature directed the Department to make attempts to bring about the informal resolution of complaints of discrimination. It also specified the means—by conference, conciliation, or persuasion. These are words of reconciliation. By using these terms, the Council indicated that the resolution process should be conducted on terms that are agreeable to the parties. *See* WEBSTER'S NINTH NEW COLLEGIATE DICTIONARY, *supra,* at 272 ("conciliate" means "to gain (as goodwill) by pleasing acts"; "to make compatible: reconcile"; "appease"; from the Latin word meaning "to assemble, unite, win over").

There is nothing to indicate that the legislature vested power in the Department to force a complainant, upon penalty of loss of an administrative remedy, to conciliate a discrimination complaint for which the Department has found probable cause. The statutory provision on conciliation refers only to such requirements as may be placed on the respondent. *See* D.C.Code § 1–2546(b). The same statutory provision expressly provides, moreover, that only "[u]pon agreement of all the parties to a complaint ... [shall] a conciliation agreement ... be deemed an order of the Commission, and shall be enforced as such." *Id.* § 1–2546(c). Furthermore, in giving rule-making authority to the Office and the Commission the legislature expressly limited that authority in order to ensure that rules and policies did not conflict with the statute. *Id.* § 1–2541(c), *supra* note 2. Forced conciliation is a concept that is foreign to the statutory language.

In addition, the legislative history makes clear that the legislature contemplated voluntary, not forced, conciliation. *See Peoples Drug Stores v. District of Columbia, supra,*

---

3. *See* D.C.Code § 1–2541(c) (Department of Human Rights and Commission "may ... promulgate ... such rules and procedures as they deem necessary to effectuate and which are not in conflict with, the provisions of this chapter").

4. *See* D.C.Code § 1–2546(c) (the Department "shall not make public, without the written con-

sent of the respondent, information concerning conciliation efforts"); § 1–2552(d) ("[e]fforts at conciliation by the [Department], or the parties, shall not be received in evidence" before the Commission or hearing examiner).

470 A.2d at 753. The legislative report stated that:

> The benefits of administrative handling of civil law are to provide an opportunity for settlement of complaints voluntarily before the hearing and to bring about more rapid compliance with the law by offering an alternative to lengthy court proceedings. We believe the establishment of administrative hearings to be vital to the success of enforcing Title 34 [codified as D.C. Code §§ 1–2501 through 2557 (Repl.1992 & Supp.1993) ].

DISTRICT OF COLUMBIA CITY COUNCIL COMMITTEE ON EDUCATION AND YOUTH AFFAIRS, LEGISLATIVE REPORT ON TITLE 34, THE HUMAN RIGHTS LAW, at 2 (October 15, 1973). *See also infra* note 13. The majority ignores this statement of legislative intent.

Had the legislature intended to deny an administrative remedy to a complainant who refused to accept what the Department determined was a make-whole offer after it had made a favorable probable cause determination, the legislature could easily have said so. Yet, the legislature said nothing about a "make-whole" offer.[5] Instead, it only authorized the Department to "endeavor" to conciliate complaints of discrimination; it provided specifically that conciliation occurs only when there is agreement of the parties and that when there is no agreement between the parties, an administrative hearing should be afforded to the alleged victim of discrimination. By so defining conciliation, the legislature indicated that the determination of whether their differences could be successfully settled through conciliation lies in the control of the parties and not the Department of Human Rights.

Viewing the statutory scheme as a whole, the "failure of conciliation efforts," as that phrase is used in § 1–2550, cannot mean more than that the parties were unable to agree to settle their dispute without further governmental involvement. *See Peoples Drug Stores v. District of Columbia, supra,* 470 A.2d at 754 (construe statute in context of legislative scheme) (citation omitted). The option that the statute leaves to the Department—to decide whether to issue a notice of public hearing before any conciliation efforts are attempted or only after conciliation efforts have been attempted and failed—does not transform the voluntary nature of the conciliation process itself. There is no ambiguity here. Significantly, the legislature chose language that refers to a failure of "efforts" and not to a failure of conciliation, a distinction suggesting, as in § 1–2546(a), that the legislature recognized both the desirability of voluntary settlement and also the likelihood that such efforts would not always succeed, thereby giving rise, where probable cause has been found, to the need for a hearing before the Commission. *See supra* note 1.

The dismissal of a complaint pursuant to Regulation 716.9 for failure to accept a make-whole offer should not be confused with dismissals for administrative convenience pursuant to § 1–2556(a). The legislature gave the Department express authority to determine whether or not there was probable cause for a complaint of unlawful discrimination and when to dismiss a complaint for administrative convenience. D.C.Code §§ 1–2545(b), – 2556(a). In its attempt to justify its dismissal of the instant complaint, the Department's concerns about weeding out frivolous complaints and controlling its workload have a hollow ring.[6] Indeed, the Department, in

---

**5.** The legislature could simply have provided that the Department may dismiss a complaint upon the complainant's refusal to accept a make-whole offer, even after a finding of probable cause. This would make the District's statute more like the federal civil rights statute. In 1992, on the federal scheme, regulations were issued addressed to the failure of an aggrieved party to accept a "make-while" offer. *See* 29 C.F.R. § 1601.18 (1992). The regulations make it crystal clear, however, that when a charge was dismissed for such a reason, the federal commission must issues a right-to-sue notice to the party claiming to be aggrieved. *See* 29 C.F.R. § 1601.-

28(b)(2). However, the D.C. Human Rights Act may tie a complainant (as it has in the instant case) to an administrative remedy. The conciliation provision in the District's statute clearly shows that the legislature did not intend to foreclose relief to a party engaged in administrative conciliation who did not accept an offer. *See* D.C.Code § 1–2546(b). When conciliation fails, a hearing is required.

**6.** *See* petition of the Department of Human Rights for rehearing en banc at 2, 8, & 9 ("The panel majority allows a claimant alleging discrimination to force the [Department] of Human

following the legislative directive of § 1–2545, has defined what it has determined to be a dismissal for administrative convenience.[7] Such dismissals do not, according to the Department's regulation, include dismissals for failure to accept make-whole offers under Regulation 716.9. *See Dankman v. District of Columbia Bd. of Elections*, 443 A.2d 507, 513 (D.C.1981) (en banc) (agency is obligated to follow its own regulations).[8]

Although the Department has authority to dismiss a complaint for administrative convenience under § 1–2556(a), that is not what it purported to do in dismissing Ms. Timus' complaint. The Department repeatedly informed Ms. Timus that the dismissal of her complaint was based on her failure to accept the respondent's offer, which, notwithstand-

ing her contrary view, the Department deemed would make her whole. This is clear from the Department's correspondence with Ms. Timus.[9] It is also clear from the Department's own regulation and its Notice of Conciliation.[10] An internal departmental memorandum further indicates that the Department also did not treat a failure of conciliation as the conclusion of the administrative process.[11] The court is bound by the reasons that the Department gave for dismissing Ms. Timus' complaint and cannot deem an agency dismissal for one purpose to be a dismissal for another. *See Jones v. District of Columbia Dep't of Employment Servs.*, 519 A.2d 704, 709 (D.C.1987); opinion of the majority, *supra*, at 760 n. 12. Under the circumstances, since the Department did not pur-

Rights and the Commission of Human Rights to commit scarce resources to litigation even though the claimant can get all the relief she could reasonably hope for in litigation through conciliation"; "[t]he costs in unnecessarily expending the resources of the [Department] ... and the Commission clearly outweigh the benefits of permitting litigation to continue in these circumstances"; the panel majority "will require the government to waste very scarce resources because of the mere whim of a complainant, thus burdening the process for all claimants").

7. Regulation 708.1 (33 D.C.Reg. 6912 (1986)), provides that "[a] case shall be terminated without prejudice if the complainant submits a written request to withdraw the complaint, or for the following administrative reasons": (1) the complainant is absent or cannot be contacted by the [Department], (2) the complainant fails to proceed, (3) the complainant fails to state a claim on which relief can be granted, or (4) the [Department] lacks jurisdiction. *See Honig v. District of Columbia Office of Human Rights*, 388 A.2d 887, 888 (D.C.1978) (Department has prosecutorial discretion whether to exercise jurisdiction over a complaint).

8. *See also Carroll v. District of Columbia Dep't of Employment Servs.*, 487 A.2d 622, 623 (D.C.1985) (party before administrative agency has due process right to notice of rules and procedures that bind the agency); *Ammerman v. District of Columbia Rental Accommodations Comm'n*, 375 A.2d 1060, 1062 (D.C.1977) (same).

9. In a letter of March 22, 1990, the Director of the Department of Human Rights and Minority Business Development informed Ms. Timus that her case "has been administratively closed ... pursuant to § 716.9 ... 33 [D.C.Reg.] 6909." This letter referred to the Department's March 7, 1990, letter, which likewise stated that "pursuant to Section 716.9 ... 33 [D.C.Reg.] 6909 (1981),

the [Department] has the authority to dismiss the Complaint after Respondent offers a make-whole remedy and the Complainant rejects the same." Likewise by letter of July 12, 1988, the Department had advised Ms. Timus that her complaint would be subject to dismissal under Section 716.9 if she rejected the respondent's make-whole offer.

10. Regulation 708.1 does not provide that a dismissal for administrative convenience includes a dismissal for refusal to accept a make-whole offer under Regulation 716.9. *See supra* note 7. The "Notice of Conciliation Process," dated February 11, 1988, stating that probable cause has been found, "invites the parties to join in a collective effort toward a just resolution of this matter," and provides that the respondent's "failure to respond ... will result in this [Department] processing the case for a public hearing in the District of Columbia Commission on Human Rights, as provided in ... D.C.Code, Section 1–2546(a) (1981)." The Notice further states that "if conciliation is not accomplished within thirty (30) days from the date of receipt of this letter, the subject case will be scheduled for public hearing." *See* Regulation 716.10, (33 D.C.Reg. 6917 (1986)) (from receipt of notice, 30 days for conciliation).

11. The internal memorandum indicates that the Department acknowledged Ms. Timus' right to a hearing upon the failure of conciliation under Regulation 716.11. By memorandum of February 8, 1990, a staff member advised the Associate Director of the Department of Human Rights that conciliation efforts had failed because the respondent failed to make "the *original* offer of an apartment" and the complainant still wanted an apartment, and therefore "recommend[ed] that the above case be certified to the Commission for hearing." (emphasis added)

port to dismiss Ms. Timus' complaint for administrative convenience and it had no authority to penalize conciliation, there is no occasion for deference by the court to the administrative interpretation of the statute as reflected in Regulation 716.9. *See James Parreco & Son v. Rental Housing Comm'n,* 567 A.2d 43, 48 (D.C.1989) (citing *Totz v. District of Columbia Rental Housing Comm'n,* 412 A.2d 44, 46 (D.C.1980)); *infra* note 15; *supra* note 3.

Finally, it must not be forgotten that the en banc court is construing the civil rights statute of the District of Columbia. The elected representatives of the District of Columbia expressly determined that the elimination of unlawful discrimination is of "the highest priority." D.C.Code § 1–2501 (Repl. 1992).[12] Indeed, so important did the legislature view the human rights provisions that it enacted the law twice.[13] Consequently, the court must take great care in construing the words of the statute in order to assure that Ms. Timus' statutory right to relief (and, consequently, the rights of others who hereafter seek administrative relief from unlawful discrimination) is protected in accordance with the statute enacted by the Council. *Cf. JBG Prop., Inc. v. District of Columbia Office of Human Rights,* 364 A.2d 1183, 1185

(D.C.1976) ("The Human Rights Law in the District of Columbia was enacted to aid not only an individual complainant, but also the public at large"); *Motorola Inc. v. McLain,* 484 F.2d 1339, 1344 (7th Cir.1973) (quoting H.R.Rep. No. 238, 92nd Cong., 2d Sess. (1972) (employment discrimination viewed in terms of "systems" and "effects" rather than intentional wrongs by individuals)). The majority's creation of ambiguity, based on an assumed willingness of the complainant to conciliate, *see* majority opinion at 15, ignores both statutory language and purpose. *See* D.C.Code § 1–2501 (statutory purpose), –2544(a) (who may file a complaint), –2553(a) (scope of relief that the Commission may order).

As her appeal is decided by a majority of the en banc court, however, Ms. Timus is denied an administrative remedy before the Commission unless she successfully pursues timely and costly litigation in which she faces the burden of persuading a trial court judge that the Department erred in applying Regulation 716.9 in her case. That is a formidable burden in light of the views expressed by at least a majority of the court.[14] Alternatively, according to a majority of the court, she can file suit *de novo* in the trial court.[15] Preter-

**12.** *See* Council of the District of Columbia Committee on Public Services and Consumer Affairs, Report of Bill 2–179, "The Human Rights Act of 1977," at 3 (July 5, 1977) ("Enactment of Title 34's provisions as the 'Human Rights Act' would underscore the Council's intent that the elimination of discrimination within the District of Columbia should have 'the highest priority' . . . .").

**13.** *See* Report of the Council of the District of Columbia Committee on Public Services and Consumer Affairs, *supra,* at 1:
"Bill 2–179 [The Human Rights Act of 1977] makes no substantive changes in the text of present Title 34 of the D.C. Rules and Regulations, the 'Human Rights Law.' Its sole effect is to enact that law as a statute and thus make it a permanent part of the District of Columbia Code. Enactment would serve three basic purposes: . . . (2) reenforcement of the Council's view that the Human Rights Act is among our most important laws and is to be vigorously enforced by all agencies and officials of the District Government."
The Committee noted that "in several court cases serious questions have been arised concerning the power of the pre-Home Rule District Government to authorize some of the remedies contained in Title 34." *Id.* at 2. Recommitting

itself to the statutory scheme in Title 34 by "put[ing] our human rights law on a firm legal footing," the Committee explained that such questions "severely weaken the effectiveness of our Human Rights Law, particularly as regards its 'private attorney general' enforcement by victims of discrimination. If those questions are not effectively answered, the District of Columbia might thus find itself in the ironic position of having a law which is widely hailed as the most comprehensive of its kind in the nation yet is lacking in enforcement mechanisms." *Id.*

**14.·** *See supra* Parts IV and V of the majority opinion. *See also supra* opinion of Judge Ferren at Part II.

**15.** This alternative became clear only before the en banc court when the Department advised the court, for the first time, that it interpreted its dismissal of Ms. Timus' complaint for failure to accept a make-whole offer under Regulation 716.9 to be a dismissal for administrative convenience under D.C.Code § 1–2556(a). *See* petition for rehearing en banc by the Department of Human Rights at 6. *See infra* opinion of Senior Judge Mack for the division majority at 778 ("the dismissal by OHR was not for administrative

mitting the prejudice that has accrued to both parties as a result of years of delay in the resolution of the complaint,[16] the majority does not clarify whether such a lawsuit would be barred by the statute of limitations and, hence, Ms. Timus would be confronted with our decision in *Anderson v. U.S. Safe Deposit Co.,* 552 A.2d 859, 862–63 (D.C.1989) (statute of limitations); *see* D.C. Code § 1–2556(a). The parties, therefore, face the prospect of still further delay and litigation to settle that issue in court before, perhaps, reaching the merits of her complaint. One judge would also allow Ms. Timus to seek further relief before the agency by further challenging the Department's application of its make-whole regulation to her case, thereafter returning again to this court with the subsequent possibility of obtaining a hearing before the Commission. *See infra* opinion of Judge Ferren at Part II.

Future litigants seeking relief from unlawful discrimination may face similarly daunting prospects of delay and costly litigation, all because Regulation 716.9 has recast the voluntary conciliation provided by the statute into a means of denying administrative relief. The administrative delay experienced by Ms. Timus and the respondent and the procedural road ahead in the courts are far removed from the statutory scheme contemplated by the Council. *See* indented quotation, *supra* at 772–773. The rationality of a human

rights statutory scheme based on voluntary conciliation in the administrative process is abundantly clear where the intent of the legislature is to promote the elimination of unlawful discrimination, and not more court litigation, in the Nation's capital. In my view, this is another reason why the Council's intent is clear and Regulation 716.9 is invalid.

Accordingly, I concur in holding that the court has jurisdiction to determine the validity of Regulation 716.9, I respectfully dissent from the holding that Regulation 716.9 is valid, and I would remand the case to the Department with instructions to issue the notice of hearing pursuant to § 1–2550.

## APPENDIX

Opinion of Senior Judge Mack of March 20, 1992, before the Division.

MACK, Senior Judge:

Petitioner challenges the dismissal on March 21, 1990, by the Department of Human Rights,[1] formerly the Office of Human Rights (OHR), of her complaint of discrimination filed on December 5, 1986, against Davis, Inc., a local real estate management company. The complaint, which triggered an investigation and finding by OHR of "probable cause" (to believe that Davis, Inc. had committed an act of discrimination by refusing rental accommodations to petitioner), *see*

---

convenience"). Before the division, Ms. Timus advised that she was of the view that her complaint was not subject to a *de novo* hearing in any court. *See* majority opinion at 755 ("Director informed petitioner ... that the case was being 'administratively closed' pursuant to § 716.9 ... because of her failure to ... accept[] ... the settlement offer"). This recently disclosed interpretation should give the en banc court pause. *See Keating v. Federal Energy Regulatory Comm'n,* 288 U.S.App.D.C. 344, 354–55, 927 F.2d 616, 625–26 (1991) ("argument [that section of statute found to be controlling has no application because permit issued is not a "permit" within meaning of the statute] comes too late, for it presents an entirely new theory of this case which cannot be appropriately raised on a petition for rehearing"; throughout the proceedings the state never disputed that the permit was within statute; hence, "the argument is waived and we decline to reopen the matter now"). The majority's effort to ignore the problem and rationalize the Department's new theory, *see* majority opinion at 760 n. 12, is unpersuasive in

light of the Department's previous position before the court and the regulations promulgated by the Department.

**16.** The court has acknowledged that delay in administrative proceedings may be cause for dismissal. *See, e.g., Wisconsin Ave. Nursing Home v. District of Columbia Comm'n on Human Rights,* 527 A.2d 282, 285–86 (D.C.1987); *JBG Prop., Inc. v. District of Columbia Office of Human Rights, supra,* 364 A.2d at 1186. *See also* Regulation 716.10, *supra* note 10 (period for conciliation is 30 days from receipt of notice of invitation to conciliate).

**1.** The District of Columbia Department of Human Rights and Minority Business Development was created by Reorganization Plan No. 1 of 1989. *See* 36 D.C. Reg. 6305 (1989); Mayor's Order No. 89–247, 36 D.C. Reg. 7847 (1989). The Reorganization Plan abolished OHR and transferred all of its functions to the new department. For the purpose of convenience, the term "OHR" is used throughout this opinion.

D.C.Code § 1–2545(a), (b) (1987 Repl.), was subsequently dismissed on the ground that petitioner had refused to accept a "make-whole" offer[2] of conciliation advanced by Davis, Inc. In this court, petitioner specifically contends that the dismissal by OHR was contrary to law. The government counters that we are without jurisdiction to review this petition and, that in any event, the dismissal by OHR must be affirmed as an act of prosecutorial discretion. We find that the challenged order of dismissal is both reviewable and reversible.

## I

Any discussion of the jurisdictional and substantive issues presented here must be cast in the light of the statutory scheme and, of course, the facts.

Among the discriminatory acts prohibited by the District of Columbia Human Rights Act, D.C.Code §§ 1–2501, –2557 (1987 Repl. & 1991 Supp.), is that of rejecting a prospective tenant in a rental transaction because a child resides with such prospective tenant. *See* D.C.Code §§ 1–2515, –2502 (30) (1987 Repl. & 1991 Supp.). An aggrieved individual may elect to file a complaint with OHR *or in any court of competent jurisdiction. See* D.C.Code §§ 1–2554(a), –2556 (1987 Repl. & 1991 Supp.). *See also Simpson v. District of Columbia Office of Human Rights,* 597 A.2d 392 (D.C.1991). The filing of a complaint with the OHR constitutes an election of remedies, *Brown v. Capitol Hill Club,* 425 A.2d 1309, 1311 (D.C.1981), and may be voluntarily withdrawn by the complainant *at any time prior to* the investigation and findings by OHR with respect to jurisdiction and probable cause. D.C.Code §§ 1–2544(b), –2545

(1987 Repl.). If OHR finds it lacks jurisdiction, or that there is no probable cause to believe that the respondent has engaged in unlawful discrimination, the Director must issue an order dismissing the complaint. D.C.Code § 1–2545(c) (1987 Repl.). When, however, the OHR finds the existence of probable cause, either in advance of conciliation attempts or upon the failure of such attempts (a discretionary approach with OHR), it "shall" issue and serve in the name of the Human Rights Commission[3] a notice of hearing. *Id.* at §§ 1–2546, –2550.

Thus, under the statutory scheme, once an aggrieved person elects to cast his or her lot with the administrative route, the processing of the complaint remains in the pipeline to the hearing stage (1) unless the OHR dismisses after a finding of no probable cause, or (2) unless the aggrieved has voluntarily and timely withdrawn the complaint, or (3) unless the agency dismisses for "administrative convenience" (in which case as to numbered events (2) and (3), the right to bring suit in a court of competent jurisdiction is restored). *See id.* § 1–2556. In the instant case, not one of these events has occurred. Petitioner has not voluntarily withdrawn her complaint; the dismissal by OHR was not for administrative convenience nor was it one mandated by statute after a finding of no probable cause. Rather, OHR dismissed the complaint after a finding of probable cause on the ground that this complainant refused to accept a proposal offered by the alleged discriminator as a remedy.[4]

## II

It is this action that underlies the basis for our judicial review. As we have pointed out,

2. *See* p. 777 & n. 4 *infra.*

3. Three Commission members, or designated Hearing Examiners sit as a hearing tribunal to perform an adjudicatory service in conformance with procedures promulgated pursuant to the District of Columbia Administrative Procedure Act. *See* D.C.Code § 1–2551 (1987 Repl.).

4. After determining that probable cause existed to believe petitioner had been discriminated against, OHR notified the parties that if conciliation was not achieved, the matter would be resolved by a trial-type hearing. An offer of concil-

iation, which OHR considered an adequate remedy or a "make-whole" offer, was forwarded to petitioner. Petitioner made a series of inquiries regarding the terms of the offer and declined to accept it until her questions were answered. The answers provided by OHR to petitioner's questions were unsatisfactory to her. Subsequently, OHR presented petitioner with an ultimatum: if petitioner refused to accept the "make-whole" offer, OHR would dismiss the complaint. Petitioner made more inquiries, but did not accept the offer. Subsequently, OHR dismissed the complaint. Petitioner then filed this petition for judicial review.

the language of the Human Rights Act mandates that once OHR finds probable cause to exist and after conciliation, if initiated, has failed, the Office must proceed to lay the ground-work for a trial-type hearing in the name of the Commission. Instead, here OHR dismissed the complaint. This it could not legally do. This dismissal was the "legal wrong" conferring jurisdiction for review purposes to the District of Columbia Court of Appeals within the meaning of the Human Rights Act and the District of Columbia Administrative Procedures Act.[5] *See Donnelly Associates v. District of Columbia Historic Preservation Review Board,* 520 A.2d 270, 276 (D.C.1987).

To hold otherwise would leave complainants without protection against "absolutely uncontrolled and arbitrary action [of an administration agency] whose action is unauthorized by any law and is in violation of the rights of the individual." We rejected such an approach in *Simpson v. District of Columbia Office of Human Rights, supra,* 597 A.2d at 398 (citing *American School of Magnetic Healing v. McAnnulty,* 187 U.S. 94, 110, 23 S.Ct. 33, 39, 47 L.Ed. 90 (1902)). In *Simpson,* in reversing the trial court's grant of summary judgment with respect to an administrative record showing a finding of "no probable cause," we stated, "We find implausible the notion that the Council of the District of Columbia intended to empower an administrative officer to doom to perpetual oblivion a complaint of unlawful discrimination, without his or her order being subject to any judicial review whatever." *Simpson, supra,* 597 A.2d at 390. The implausibility is even more apparent in the instant case where the administrative agency has made a

finding that probable cause exists to believe that an individual has been the subject of discrimination. The net result of such a policy would deny the individual not only judicial review but the due process right to a trial-like hearing which the statute provides.[6]

Respondent, therefore, can gain no mileage from the argument that the Human Rights Act is modelled on the National Labor Relations Act, and that therefore the courts will not review a decision in which OHR merely exercises its "prosecutorial discretion." *See id.* (citing *Hourihan v. NLRB,* 91 U.S.App.D.C. 316, 201 F.2d 187 (1952), *cert. denied,* 345 U.S. 930, 73 S.Ct. 792, 97 L.Ed. 1359 (1953)). To the extent that OHR found probable cause, it has exercised its discretion. It does not have discretion thereafter to dismiss the complaint unless it had purported to act (which it did not) on the ground of administrative convenience. *See Brown v. Capitol Hill Club, supra,* 425 A.2d at 1312. Moreover, the broad argument that OHR (and its successor) have total control of the "prosecution" of cases administratively filed is antithetical to the enforcement of a civil rights act. In this regard, we need only look to the language, the history, and the case law of our federal civil rights statute (Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.,* as amended by the Equal Employment Opportunity Act of 1972, PUB.L. No. 92–261, 86 Stat. 103), undeniably a model for purposes of administration and enforcement of the local statute. *See* Education and Youth Affairs Committee, District of Columbia Council, Legislative Report on Title 34, The Human Rights Law at 1 (October 15, 1973). Indeed, under the original statutory scheme of the federal statute (the 1964 Act), the Equal Employment Opportuni-

---

5. D.C.Code § 1–2554 of the Human Rights Act provides that:
 [a]ny person suffering a legal wrong, or adversely affected or aggrieved by, an order or decision of the Commission in a matter, pursuant to the provisions of this chapter is entitled to judicial review thereof, in accordance with § 1–1510 [*i.e.,* the D.C. Administrative Procedure Act], upon filing in the District of Columbia Court of Appeals, a written petition for such review.
 D.C.Code § 1–1510 of the D.C. Administrative Procedure Act states in relevant part that:

[a]ny person suffering a legal wrong ... by an order or decision of ... an agency in a contested case, is entitled to judicial review ... [by] the District of Columbia Court of Appeals.

6. It is for this reason—the credible claim that a government agency has exceeded its statutory authority—that alternatively, this court could treat this as a petition for mandamus, *i.e.,* to compel compliance with the dictates of the statute. *See* D.C.App.R. 21; *see also Dillard v. Yeldell,* 334 A.2d 578 (D.C.1975).

ty Commission (EEOC) had no power to prosecute the charges filed with it but only the option of investigating and attempting conciliation with the party it found cause to believe was engaging in a discriminatory practice.[7] *See generally* EQUAL EMPLOYMENT OPPORTUNITY—RESPONSIBILITIES, RIGHTS, REMEDIES (John Pemberton, Jr., ed.) (Practising Law Institute 1975). Once the respondent failed to reach an agreement with EEOC, EEOC issued to the aggrieved a "right to sue notice," which quickly led to the characterization of aggrieved persons as "private attorney generals." *See generally Alexander v. Gardner–Denver*, 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974); *see Newman v. Piggie Park Enterprises, Inc.*, 390 U.S. 400, 88 S.Ct. 964, 19 L.Ed.2d 1263 (1968). Thus, the federal statute from the beginning put ultimate control in the hands of the complainants and the courts and this policy continued after the statute was amended to give EEOC the right to sue in its own name. *See Occidental Life Insurance Co. v. EEOC*, 432 U.S. 355, 365–66, 97 S.Ct. 2447, 2454, 53 L.Ed.2d 402 (1977) (under this title, the provisions allow the aggrieved person to select a remedy in the courts where there is inaction, dalliance or dismissal of the charge by the agency, or unsatisfactory resolution); *Dent v. St. Louis–San Francisco Ry. Co.*, 406 F.2d 399, 402 (5th Cir.1969), *cert. denied*, 403 U.S. 912, 91 S.Ct. 2219, 29 L.Ed.2d 689 (1971) (in order for the complainant to have his or her day in court, the Commission need not actually engage in conciliation); *Sciaraffa v. Oxford Paper Co.*, 310 F.Supp. 891, 893 (D.Me.1970) (complainants are not to be denied their day in court due to administrative delay or inability to accomplish conciliation); and 2 A. LARSON & L. LARSON, EMPLOYMENT DISCRIMINATION § 48.80 at 9A–97 (1982) ("conciliation proceedings can be by-passed by an individual").

The act of "conciliation" by its very terms implies pacifying—not enforcing. Conciliation is an integral part of both our federal and local statutes but it is not an indispensable part. Our Human Rights Act, like its federal counterpart, encourages conciliation, but if conciliation fails, a complainant must have a right to pursue his charge in an appropriate adjudicatory forum.

III

In this case, the error on the part of OHR stems from its adoption of regulations which do not comport with the statutory scheme on the Human Rights Act. Thus, the statutory provision places with the OHR "[i]f . . . the circumstances so warrant" the option of endeavoring to eliminate a discriminatory practice "by conference, conciliation or persuasion." D.C.Code § 1–2546(a) (1987 Repl.). The terms of any conciliation agreement may require a "respondent" to refrain from committing such practices or to take affirmative action, and may include consent by the "respondent" to the entry in a court of a consent decree. *See id.* § 1–2546. These conciliation provisions make no reference to the complainant.

The statute also provides that in the event of failure of conciliation, or in advance of conciliation efforts, and after a finding of probable cause, the OHR shall issue "a written notice, together with a copy of the complaint," requiring the respondent to answer the charges at a public hearing before the Commission sitting as an adjudicatory body. *Id.* at § 1–2550.

By contrast, OHR's regulations speak of notice to the parties "of an opportunity to settle" and "inviting the parties to conciliate the complaint." *See* 33 D.C.Reg. 6916, 6917 (1986) (to be codified at 4 DCMR §§ 716.1, 716.10 respectively). With respect to the failure of conciliation, the regulations describe such failure as occurring when respondent refuses to participate or offers a remedy that will not make the complainant whole "and complainant refuses to accept such an offer." 33 D.C.Reg. 6917 (1986) (to be codified at 4 DCMR § 716.11). The basic prob-

---

7. Under the 1964 Act, the Justice Department and persons aggrieved were authorized to bring suit in the federal court. In 1972, the statute was amended to permit EEOC to sue in its own right. Prior and subsequent to this time, EEOC entered private suits as *amicus curiae*. Under the 1972 amendments, the private right of action was expressly preserved; when EEOC brought suit, moreover, the aggrieved had an absolute right to intervene.

lem arises, however, with the promulgation of 33 D.C.Reg. 6917 (1986) (to be codified at 4 DCMR § 716.9) which goes one step further to provide that

> If during conciliation efforts, respondent offers a remedy that would place complainant in the same position that complainant would have been in had the alleged discriminatory practice not occurred, and complainant refuses to accept such offer, and if the Director determines that such offered remedy would make complainant whole, *the Director may order the complaint dismissed.*

(Emphasis added.)

In so doing, OHR has conferred upon itself the authority to dismiss a complaint after finding that probable cause exists and after conciliation efforts have begun. There exists no statutory authority for this regulation. The Act authorizes OHR to dismiss a complaint only either upon finding no probable cause, 33 D.C.Reg. 6918 (1986) (to be codified at 4 DCMR § 718.1), or "on the grounds of administrative convenience." 33 D.C. Reg. 6912 (1986) (to be codified as 4 DCMR § 708.1). Where conciliation efforts have failed, OHR must proceed with the issuance of a notice of a hearing. 33 D.C. Reg. 6918 (1986) (to be codified as 4 DCMR § 717.2). To do otherwise would deny a petitioner the right to develop proof under protective procedures which the statute affords.

The statute authorizes OHR to endeavor to resolve disputes through conciliation. The statute does not authorize OHR to force settlements on complainants by threatening to dismiss their complaints. While OHR may have intended by its regulation to further encourage settlements, good intentions are no substitute for statutory authority. The statute is geared to first ferreting out discrimination and, second, to fashioning remedies for that discrimination. OHR, having determined that probable cause existed to believe unlawful discrimination had occurred,

had no authority to dismiss petitioner's complaint without a hearing on the merits.

*Reversed and remanded.*

STEADMAN, Associate Judge, dissenting:

For reasons that I will briefly set forth, I believe that this court does not have jurisdiction to hear this direct appeal and the case should therefore be dismissed.[1]

I start with the basic tenet of administrative law that an individual who is aggrieved by an action of an administrative agency can almost invariably obtain judicial review of such action. *See generally* BERNARD SCHWARTZ, ADMINISTRATIVE LAW 436–37 (2d ed. 1984) ("there has never been any question of the propriety of judicial review"). The jurisdictional question before us, however, is not whether judicial review of the agency action challenged here is available. The issue is whether the District of Columbia Court of Appeals ("DCCA") is the proper forum for judicial review *in the first instance.* At bottom, the question is this: when the legal dispute is *whether* the petitioner has a right to an agency hearing, has the proceeding yet become a "contested case." I think the answer is no.

The District of Columbia Administrative Procedure Act ("DCAPA") has never provided for initial DCCA review of *all* agency actions. On the contrary, ever since it was first enacted the DCAPA has provided that the DCCA is the proper forum in which to first challenge only one specific type of situation, *viz*, a "contested case." *See* D.C.Code § 1–1510(a) (1992); *Dupont Circle Citizen's Ass'n v. District of Columbia Zoning Comm'n,* 343 A.2d 296, 298–99 (D.C.1975) (en banc). This is not a general grant of jurisdiction to the DCCA to review *ab initio* all agency action; it gives only a limited power of such review. *See Lee v. District of Columbia Bd. of Appeals & Review,* 423 A.2d 210, 215 (D.C.1980). All other judicial challenges to agency action must be brought in the first instance in Superior Court, the District of Columbia's court of general jurisdiction.[2]

---

1. On the merits, I would agree with the analysis in part IV of the majority opinion.

2. The legislative history of the District of Columbia Administrative Procedure Act indicates that

although it is somewhat different from the federal Administrative Procedure Act ("APA"), it is generally to be interpreted akin to the federal APA. *Lee, supra,* 423 A.2d at 216. A challenge to a federal agency action is heard in the District

The only type of agency proceeding subject to initial review in the DCCA, a "contested case," is defined as

a proceeding before the Mayor or any agency in which the legal rights, duties, or privileges of specific parties are required by any law (other than this subchapter), or by constitutional right, to be determined after a hearing before the Mayor or before an agency,

D.C.Code § 1–1502(8) (1992), and has been construed by this court to refer only to situations in which the hearing that is required is a trial-type adjudicative hearing. *See, e.g., Chevy Chase Citizens Ass'n v. District of Columbia Council,* 327 A.2d 310, 314 (D.C. 1974) (en banc) ("trial-type hearing where such is implicitly required by either the organic act or constitutional right"). This is squarely in accord with the nature of an appellate tribunal. The prime role of the DCCA is to review decisions resulting from or relating to an adjudicative hearing, whether the appeal is from a judicial or an administrative trial tribunal. But until that point, the normal judicial forum to which disputes are first addressed is the trial court of general jurisdiction.[3]

In the instant case, there was no hearing, nor does anyone argue that there was a hearing. Nevertheless, petitioner argues that this is a contested case based on the proposition that the statute does not require that a hearing actually have occurred, only that in petitioner's view a present right to a hearing exists. I do not think that contested case status has yet been reached when the very issue in dispute is whether the conditions prerequisite to a right to a hearing have been satisfied. If on appeal we answer that

issue in the negative, then indeed the matter was not yet a contested case. The question of whether we have jurisdiction should not depend upon the answer to the ultimate issue; the jurisdictional issue should be determined at the outset. Furthermore, the determination whether a right to a hearing has accrued—such as whether probable cause exists or conciliation has failed—may very well depend upon a factual inquiry, for which a trial court is plainly fitted and an appellate court not at all. This indeed is an important reason why direct appellate review is limited to contested cases, where normally a factual record has already been made by the agency.

I reiterate that lack of jurisdiction in the DCCA to directly review agency actions negating "contested case" status does not mean that the action of the agency cannot be judicially reviewed. We are addressing the question of *which court* is the appropriate forum for initial judicial review. In my view, the type of preliminary question of which petitioner seeks review does not fit within the carefully defined direct appellate jurisdiction of this court.

Court under the general "federal question jurisdiction" of that court, unless the agency's statute or some other statute specifically provides for review in the circuit court of appeals. *Five Flags Pipe Line Co. v. Dep't of Transp.,* 272 U.S.App. D.C. 221, 222, 854 F.2d 1438, 1439 (1988); *see also* 28 U.S.C. § 1331 (1988). Congress "may freely choose the court in which judicial review [of agency actions] may occur," *Five Flags Pipe Line Co., supra,* 272 U.S.App.D.C. at 222, 854 F.2d at 1439, and with certain exceptions, Congress has chosen the court of general jurisdiction. While the DCAPA differs in that it itself specifically provides for direct appellate review of agency actions in certain cases, *viz,* contested

cases, its basic structure is nevertheless similar to the federal APA.

3. I do not mean to suggest that if the general right to a hearing is not in dispute, a trial-type hearing must necessarily have taken place in order to be an appealable "contested case," any more than in some appeals from trial courts. *See, e.g., Debruhl v. District of Columbia Hackers' License Appeal Bd.,* 384 A.2d 421, 425 (D.C.1978) (adjudicatory proceeding before an agency does not lose its character as a contested case merely because there are no disputed facts requiring trial-type hearing).