**Virginia MINNIS, Petitioner,**

v.

**DISTRICT OF COLUMBIA DEPART-MENT OF HUMAN SERVICES, Respondent.**

**No. 96–AA–1603.**

District of Columbia Court of Appeals.

Submitted May 13, 1998.

Decided June 25, 1998.

Marion E. Baurley, Washington, DC, for petitioner.

Jo Anne Robinson, Principal Deputy Corporation Counsel, Charles L. Reischel, Deputy Corporation Counsel, and Sheila Kaplan, Assistant Corporation Counsel, for respondent.

Before WAGNER, Chief Judge, FARRELL, Associate Judge, and BELSON, Senior Judge.

PER CURIAM.

In 1994, the District of Columbia Department of Human Services (DHS) removed certain foster children from petitioner's foster care home in Maryland, asserting that social workers, school personnel, therapists, and foster children themselves had reported abuse and neglect by petitioner. At the time of these proceedings before the agency, DHS had not placed other children in petitioner's home. Petitioner contends that these actions had the effect of "closing" her foster home in violation of law. A DHS hearing examiner concluded otherwise, and we affirm.

## I.

An undated 1994 letter from DHS to petitioner declared DHS's intention "to move forward with the closure of your foster home as a result of a comprehensive investigation" of the complaints summarized above. The letter informed petitioner of her right to seek "a fair hearing on this matter" before DHS. Petitioner requested and was granted a hearing, although the foster children apparently had been removed from petitioner's care in the meantime, and no other children had been placed with her. At the hearing, DHS conceded that it had since recognized its lack of authority to close an out-of-state foster care home, but maintained that the removal of the children in question was justified and that petitioner had no general right to the placement of District of Columbia children in her Maryland home.

The DHS hearing examiner acknowledged, both at the hearing and in his written order, that petitioner was entitled by D.C.Code § 16–2320(g) (1997) to a hearing at which to contest a proposed "change in the placement" of children entrusted to her care.[1] The hearing examiner found, however, that petitioner had "requested a hearing to contest [only] the decision of the agency to close [her] foster home[ ]"—an issue since mooted—but "not to contest the agency's decision to change the placement of the children." Although the hearing examiner nonetheless advised petitioner (who was represented by counsel) of her "right to contest the removal of the children" who had been placed with her, petitioner offered no information to counter the reports of neglect and abuse that had led to their removal. Nor did she request any further opportunity to challenge the basis of the removal decision.[2] Even in her brief in this court, petitioner's primary argument is that the hearing examiner "erroneously separated the issue of closing a foster home and changing the placement of foster children"—in other words, that the removal of the children and apparent refusal to place additional children with her amounts to the illegal "closing [of her] foster home."[3]

## II.

To the extent petitioner seeks review under § 16–2320(g) of the removal of particular children from her home, we hold that she has not presented a sufficient record to enable us to disturb the agency's decision. *See Cobb v. Standard Drug Co.,* 453 A.2d 110, 111 (D.C.1982). Despite the examiner's advice to her at the hearing, petitioner has never availed herself of the right to contest the factual basis of the removal decision. Petitioner argues in this court that DHS did not give her the ten-day notice of change in placement required by § 16–2320(g).[4] The record reveals otherwise. While the letter informing petitioner of the agency's intent to remove the children was undated, it stated that the "closure" would be effective on March 1, 1994, and that a meeting had been scheduled to discuss the matter with her on February 10, 1994. Petitioner filed a formal request for a hearing on February 17, 1994. Thus, assuming the removal took place on or shortly after March 1 (the record is not precise as to when), petitioner received more than ten days prior notice of the intended removal.

---

1. Section 16–2320(g) provides, in part, that upon request of persons including a foster parent, "the department or agency having legal custody of the child shall afford an opportunity for an administrative hearing to review the proposed change in the placement of the child. Except in the case of an emergency, the hearing shall be held and a decision rendered prior to a change in the placement."

2. That fact is important in light of petitioner's argument in this court that, without advance notice to her, a hearing on DHS's decision to "close" her home was converted into a hearing on the change in placement under § 16–2320(g).

3. The only information petitioner offers in opposition to the placement change is that she had been a foster parent for over forty years, DHS had placed hundreds of children in her home, and she had an outstanding reputation with DHS.

4. Under the statute, DHS must "give notice … of any change in the placement of the child to … the child's foster parent at least ten (10) days prior to the change in placement, except that in the case of an emergency notice shall be given no later than twenty-four (24) hours … after the change."

Beyond petitioner's right to challenge the specific change in placement under § 16–2320(g), which she essentially forfeited, petitioner appears to argue that she was entitled to a hearing at which to challenge DHS's refusal to place any other children in her home. *See, e.g.,* Br. for Pet. at 14 ("[T]he agency who claims to have no authority to close the petitioner's home has closed it and kept it closed without any opportunity to be heard"). We hold that petitioner has no such right, statutory or constitutional. She relies on the Youth Residential Facilities Licensure Act of 1986, D.C.Code § 3–801 *et seq.* (1994), which requires a hearing upon request when a license has been suspended. § 3–808(a)(1). But that Act requires licensure of youth residential facilities located within the District of Columbia. *See* § 3–802(a). Petitioner's foster home in Maryland was never licensed by a District of Columbia agency, and so the District's licensing (and de-licensing) procedures are not applicable here. Moreover, any constitutional right petitioner enjoys as a foster parent, *see Smith v. Organization of Foster Families for Equality & Reform,* 431 U.S. 816, 97 S.Ct. 2094, 53 L.Ed.2d 14 (1977), is limited to the opportunity to challenge removal of particular children which the District affords under § 16–2320(g) and which petitioner was not denied. In the absence of a constitutional or statutory right to an administrative hearing, petitioner's claim that DHS could not suspend further placements without a hearing founders on the "contested case" requirements of D.C.Code § 1–1509 (1992). *See* § 1–1502(8); *Timus v. District of Columbia Dep't of Human Rights,* 633 A.2d 751, 756 (D.C.1993) (en banc).

*Affirmed.*